MUTUAL FINANCE COMPANY, Inc., a Corporation, Plaintiff-Respondent,

v.

AUTO SUPERMARKETS, INC., a Corporation, Defendant-Appellant.

No. 31539.

St. Louis Court of Appeals.
Missouri.
Oct. 20, 1964.

Gerald K. Rabushka, Jack B. Schiff, St. Louis, for defendant-appellant.

Goldenhersh, Goldenhersh, Fredericks, Newman & Lane, Samuel J. Goldenhersh, St. Louis, for plaintiff-respondent.

ANDERSON, Judge.

This is a suit in replevin brought by Mutual Finance Company, Inc., against Auto Supermarkets, Inc., for the recovery of a 1960 Cadillac automobile. In its pleading plaintiff prayed judgment for the recovery of said property and $500.00 damages for the taking and detention thereof. Defendant filed an answer and counterclaim which consisted of a general denial of the allegation of plaintiff's statement in replevin, and averred that defendant was entitled to the possession of said property which was of the value of $4,500.00. The prayer of said pleading was that plaintiff's cause be dismissed; and for recovery of said property or its value together with damages in the amount of $500. Plaintiff's reply consisted of a general denial of the allegations of de-

fendant's counterclaim. The case was tried to the court and resulted in a finding and judgment for plaintiff on its cause of action; that it retain possession of said property; and that defendant take nothing by reason of its counterclaim. Defendant has appealed from the judgment.

This suit was filed March 30, 1961. On the same date the court issued a writ of replevin and order of delivery, which was executed on said date by the sheriff taking the possession of the automobile in question and delivering it to plaintiff. At that time plaintiff had filed no affidavit in compliance with Supreme Court Rule 99.01, V.A.M.R., which under the authorities was necessary to the issuance by the Court of a valid order of delivery under Supreme Court Rule 99.02.

On May 1, 1961, defendant filed its motion to set aside the order of delivery on the ground that the necessary affidavit had not been filed. On May 2, 1961, this motion was by the court sustained, and plaintiff was ordered to surrender the automobile seized under the order of delivery, and return same to defendant. Also, on May 2, 1961, the court granted plaintiff leave to file a proper affidavit relating to the allegations in its original petition which plaintiff did on said date. The Court then issued an order of delivery and summons in replevin returnable according to law. Plaintiff also at said time in compliance with Supreme Court Rule 99.03 filed a bond in the sum of $8,000.

On May 8, 1961, defendant filed its answer and counterclaim which has heretofore been described. Thereafter, and on May 10, defendant filed a motion to strike plaintiff's pleadings for failure of plaintiff to comply with the order of May 2, 1961, which ordered plaintiff to return the automobile to defendant. This motion was denied on May 11, 1961.

On September 28, 1962, the cause came on for hearing. At the start of the trial counsel for defendant interposed the following objection: "If the Court please, on behalf of defendant, we object to any evidence on behalf of plaintiff, and ask that their petition be stricken and their cause of action dismissed, for the reason that the plaintiff has failed to comply with the order of this court of May 2, 1961, to return the property mentioned in the affidavit and statement." This objection and motion to dismiss was denied.

. The evidence received on behalf of plaintiff was to the effect that on January 17, 1961, plaintiff loaned Bob Carson the sum of $3753.75 for which he gave his promissory note secured by a chattel mortgage on a 1960 Cadillac automobile. No payments were ever made on this note, and when the account became delinquent, plaintiff brought this replevin action and the automobile was taken under the writ from the possession of defendant. The main issue at the trial was whether the chattel mortgage was a valid lien as against the defendant. The evidence showed that the mortgage was filed in Phelps County. Defendant attempted to show that Bob Carson resided in Pulaski County at the time the chattel mortgage was executed. Plaintiff offered evidence which it contends shows that Bob Carson lived in Phelps County at said time. There were objections by defendant to the admissibility of certain documents and records received in evidence, and on this appeal it is urged that the court erred in admitting same. The facts relevant to these contentions will be detailed later when we consider the assignments of error with reference to the admission of this evidence.

Appellant's first point raised is that the trial court erred in denying its motion made at the beginning of the trial, to strike plaintiff's petition and dismiss the action for failure of plaintiff to comply with the previous order of the court which directed plaintiff to surrender to defendant the automobile seized under the writ of replevin.

An examination of the transcript shows that the foregoing allegation of error was not presented to the trial in defendants motion for new trial. It is therefore

not preserved for review in this court. Civil Rule 79.03.

Appellant's next complaint is that the court erred in permitting Charles Elfrank to testify with reference to plaintiff's Exhibits 1, 2 and 3, and in admitting said exhibits into evidence, based upon his testimony. Plaintiff's Exhibit No. 1 was a Missouri Certificate of Title to the automobile, showing ownership in Bob Carson. On the face of this exhibit is a certification by Austin Bell, Recorder of Deeds of Phelps County, to the effect that a chattel mortgage on said motor vehicle was filed in his office on January 20, 1961. Plaintiff's Exhibit No. 2 was a note in the principal sum of $3753.75, and a chattel mortgage on the automobile involved herein securing said note. Both instruments are dated January 10, 1961· and both are signed by Bob Carson. · Mutual Finance Company, Inc., was designated payee in the note, and mortgagee in the chattel mortgage. Plaintiff's Exhibit ·No. 3 was a ledger card of plaintiff's ·showing a history of the sale of the automobile in question to Bob Carson and the payments required under the purchase.

Appellant·contends that Elfrank was not a competent witness to lay a foundation for the admission of said exhibits under the Uniform. Business Records as Evidence Law ·(§ 490.680 RSMo 1959, V.A. M.S.) for the reason that he was not a proper custodian of the records of said company inasmuch as he was not connected with plaintiff's company at the date of the trial; that since the exhibits had not been qualified under the law, they were inadmissible and should not have been admitted into evidence; that since they were not admissible plaintiff failed to make a case and for that reason the trial court should have sustained defendant's motion to dismiss at the close of plaintiff's case.

The transcript shows that defendant objected to the admission into evidence of plaintiff's Exhibits No. 1 and No. 2, but not on the grounds urged in this court. The·point now urged·as to said exhibits is,

therefore, not open .for consideration or review. Hall v. Clark, Mo., 298 S.W.2d 344, and cases cited therein. Furthermore it does not appear that said exhibits were offered as records of the company admissible under the Uniform Business Records as Evidence Law.

Plaintiff's Exhibit No. 3 was offered in evidence as a business record admissible under Section 490.680 supra, and when plaintiff's counsel sought information from Mr. Elfrank to qualify the exhibit under said act, defendant's counsel objected on the ground " * * * because he is not competent to testify." There was no suggestion to the Court as to why it was thought the witness was not competent to testify. However, he must have had in mind the reasons now urged, to wit; "Being a stranger to plaintiff at trial, he certainly could not qualify as custodian of such records as required by the Revised Statutes of Missouri, 1959, Section 490.680, * * * and absent his personal attendance to and witness of the signing of the chattel mortgage by Bob Carson, he could not in any event be an 'other qualified witness' as set out in the statute."

Mr. Elfrank testified that he first became associated with Mutual Finance Company in January, 1959; that in the Spring of 1961 he was an officer of that company; that he had some direct connection with the Robert Carson account; that he first did business with Mr. Carson beginning approximately in March, 1959; that he supervised the office and actually solicited Carson as a Mutual Finance customer.

Mr. Elfrank further testified that plaintiff's Exhibit No. 3 was a ledger card showing the payments required and the history of the performance on the contract; that the record was maintained in the usual course of business; that entries are made a few days following the date of execution of the note and mortgage, and when payment is received it is entered the same day it is received and that he recognized the handwriting of the bookkeeper as having

made the entries on plaintiff's Exhibit No. 3.

The witness further testified that Mutual Finance Company was under his direct supervision; that he screened the paper that was purchased; that he did the hiring and firing, and was the only liaison between the office and the home office; that the systems employed there were suggested by him and supervised by him; that he was thoroughly familiar with the manner in which the records were maintained, which was his responsibility.

Mr. Elfrank left the employ of Mutual Finance Company in September, 1962.

█ In our judgment Mr. Elfrank was a qualified witness under § 490.680 RSMo 1959, V.A.M.S., to testify as to the matters specified in said statute as necessary to render the exhibit admissible in evidence, even though he was not employed by plaintiff at the time of trial. It is also our opinion that the facts testified to were sufficient to justify the admission of said exhibit into evidence.

█ It is urged that plaintiff was not entitled to possession of the automobile for the reason there was no showing that Bob Carson had defaulted in the payments on the note since no demand therefor was shown. The note and mortgage called for five payments of $100.00 each and one payment of $3253.75. Neither the note or mortgage specified when the payments were due. The trial court, although not requested to make findings of fact and conclusion of law, filed a written opinion in the case in which he stated that the actual making of a demand was unnecessary as a useless act. The note provided that if any installment was not paid when due all installments would become due and payable at the option of the legal holder of the note without notice or demand. Exhibit 3 recites that the first payment was due March 1, 1961, and the final payment August 1, 1961. Mr. Elfrank testified that the first payment was due March 1, 1961, and that no payments were ever made on the

note; and that when it became delinquent, he undertook to locate the automobile. He located it at defendant's place of business which the evidence shows was located at 820 North Kingshighway in St. Louis. The whereabouts of Bob Carson was not clearly shown. Elfrank testified he did locate Carson during the summer of 1961 in the Federal Court in Springfield, Missouri, the day the jury returned a verdict of guilty in the counterfeiting case.

Bob Auffenberg, defendant's witness, testified that the business of Auto Supermarkets, Inc., was the buying and selling of motor vehicles. On cross-examination he testified that he worked at defendant's place of business, and supervised the buying of the automobile here in question for defendant Auto Supermarkets, Inc.

In the chattel mortgage the mortgagor, Bob Carson, agreed among other things that he would not attempt to sell, assign or dispose of the mortgaged property. There was also a provision that if the mortgagor should fail to keep and perform any of the covenants, stipulations and agreements in said mortgage, the whole amount of the debt secured by the note would be admitted by said mortgagor as due and payable; and that the mortgagee could, at its option (notice of which was waived) foreclose the mortgage by action or otherwise without demand for performance and sell the property, etc..

Since Carson had violated the terms of the agreement contained in the mortgage by selling or attempting to sell the mortgage property to defendant the whole amount of the debt became due and payable at the mortgagee's option without notice or demand, and plaintiff was entitled to possession for the purpose of foreclosure without first making a demand upon Carson for payment of the amount due.

█ It is next urged that plaintiff failed to prove that its chattel mortgage was filed for record so as to constitute notice to defendant of plaintiff's alleged lien. There is no merit to this contention. The mortgage

was introduced in evidence. It bore the signature of Bob Carson as mortgagor. Mutual Finance Company was named as mortgagee. The automobile was described as 1960 Cadillac, 4 door H.T., Serial # 60K057935. The principal debt secured was $3753.75. The Certificate of Title of the automobile was then offered in evidence. It described the automobile as a 1960 Cadillac, 4-door sedan, Serial Number 60K057935. It showed Bob Carson as the owner of said motor vehicle. On the face of the title was a certificate signed by Austin Bell, Clerk of the Circuit Court of Phelps County and ex-officio Recorder of said county, which recited that a chattel mortgage for $3753.75 to Mutual Finance Co. was filed in Phelps County on January 20, 1961. Section 443.-480 RSMo 1959, V.A.M.S., provides that it is the duty of the Recorder of Deeds to make such certificate when requested by the mortgagee, for said mortgage to be notice to the world. In our view the foregoing evidence justifies a finding that the chattel mortgage in question was filed in Phelps County.

Appellant's final assignment of error relates to the only real dispute in this case. It is urged that plaintiff failed to offer any evidence that Bob Carson was a resident of Phelps County, whereas defendant proved by the clear weight of the evidence that Carson lived in Pulaski County; that since he was a resident of Pulaski County, the chattel mortgage did not constitute notice to defendant of plaintiff's lien, and for that reason plaintiff was not entitled to recover in this action.

Charles Elfrank, testifying for plaintiff, stated that he was personally acquainted with Bob Carson; that he had occasion to associate with Bob Carson while doing business with him; that he saw him socially and would go out with him from time to time; that he visited him at a private residence in Rolla; that when he visited him at the private residence in Rolla, Carson's wife and child were present; that this residence where he visited Carson was a small house in a section called Sunset Hills, or Sunset

Acres, or Sunset Park; that it was on Highway 63 about three or four blocks from the office of plaintiff, Mutual Finance Co.; that he had food and drink at this residence served by Mrs. Carson; that the address "4 Sunset Hills, Rolla, Missouri" appearing in plaintiff's Exhibit No. 3 as the address of Bob Carson, is the address where he visited with Carson and his wife and child; that he would see Mr. Carson as often as once a week in Rolla, in his office, which was about thirty or thirty-five miles from Carson's place of business in Pulaski County. The evidence shows that Carson was engaged in the used car business which was located just outside the gate entrance to Fort Leonard Wood. His business was known as Trader Inn Auto Sales.

The deposition of Rice Farmer, County Clerk for Pulaski County, was introduced by defendant. In that deposition Farmer testified that on March 19, 1959, Bob Carson came to his office in regard to his commission as Notary Public, and at said time made oath he was a resident of Pulaski County. It must be noted that this was approximately two years before the mortgage in question was executed. He also testified that as far as he knew Carson lived in his trailer at his place of business in Pulaski County outside the gate entrance to Fort Leonard Wood. Mr. Elfrank, plaintiff's witness, testified that Carson had a house trailer at his place of business which he used as an office.

Eula May Anderson, Deputy County Clerk of Pulaski County, testified on behalf of defendant. She identified defendant's Exhibit A, a Merchants Bond filed in her office by King Cole Auto Sales, which bore the signature of Bob Carson as Notary Public of Pulaski County, on an affidavit thereon. The bond was dated January 30, 1961. Defendant's Exhibit B was an instrument dated May 25, 1960, on which the signature of Bob Carson and his notorial seal appeared under date of February 25, 1960.

Defendant called as a witness William H. Jones, Circuit Clerk and ex-officio Recorder of Deeds for Pulaski County. While this

witness was on the stand there was offered and received in evidence defendant's Exhibit C. This exhibit does not appear in the transcript, nor was it separately filed in this court as provided for in Civil Rule 82.15. We are therefore unable to determine its probative value on the issue of Bob Carson's residence.

 We have examined and considered the evidence relative to the issue of Bob Carson's residence. We find no merit whatever to the contention that plaintiff failed to offer any evidence that Bob Carson was a resident of Phelps County. Nor did defendant prove, as it contends, by the overwhelming weight of the evidence that Bob Carson was a resident of Pulaski County. The issue was one of fact under the evidence adduced, which in our judgment was properly decided by the trial court.

The defenses in this case, and the points raised on this appeal were purely technical and, wholly without merit. For that reason the judgment appealed from is affirmed.

RUDDY, P. J., and WOLFE, J., concur.