**SCIOTO COUNTY REGIONAL WATER DISTRICT NO. 1, AUTHORITY, Plaintiff–Appellant,**

v.

**SCIOTO WATER INC., and Daniel R. Glickman, Secretary, United States Department of Agriculture, Defendants–Appellees.**

No. 95–3918.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1996.

Decided Dec. 18, 1996.

John W. Hurst (briefed), Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, and Louis T. Rosenberg (argued and briefed), San Antonio, TX, for Plaintiff–Appellant.

Susanne M. Cetrulo (argued and briefed), Ware, Bryson, West, Bartlett, Kummer & Knapmeyer, Edgewood, KY, Steven Lee Mowery (briefed) Mowery, Brown & Blume, Wheelersburg, OH, and James Coombe (argued and briefed), Office of the U.S. Attorney, Cincinnati, OH, for Defendants–Appellees.

Before SUHRHEINRICH and DAUGHTREY, Circuit Judges; JOHNSTONE,* District Judge.

DAUGHTREY, Circuit Judge.

Scioto County Regional Water District No. 1, Authority, the plaintiff in this action, is a regional water district that has operated in Ohio for 30 years. Although it previously had obtained financing through bonds issued to the Farmers Home Administration, the plaintiff repurchased the bonds and obtained private financing. When the defendant, a competitor, built a wellfield upstream from the plaintiff's wellfield, the plaintiff sought protection against the resulting limitation on its services, citing 7 U.S.C. § 1926(b), a provision in the Consolidated Farm and Rural Development Act that protects federally financed water associations from such competition. The district court, however, dismissed the action under Fed.R.Civ.P. 12(b)(6), finding that the plaintiff lost its statutory protection when it repurchased its Farmers Home Administration bonds and canceled its debt. We find no error and affirm the district court's judgment.

The plaintiff, Scioto County Regional Water District No. 1, Authority, referred to throughout this litigation as "Water 1," is a regional water district that has operated in Ohio since 1966. Defendant Scioto Water is a private, non-profit water supply corporation. Defendant Daniel Glickman is the Secretary of the United States Department of Agriculture, of which the Rural Economic and Community Development Service, formerly the Farmers Home Administration, is an agency.

To obtain funding for its water service, Water 1 issued several million dollars in bonds to the Farmers Home Administration[1] in the late 1960's and early 1970's. In 1969, Scioto Water became a non-profit corporation authorized to install wells and operate a water distribution system. It, too, was funded with bonds sold to the Farmers Home Administration. Since the early 1970's, how-

---

* The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation.

1. Although the Farmers Home Administration is now known as the Rural Economic and Commu-

nity Development Service, for the sake of simplicity, this opinion will refer only to the Farmers Home Administration.

ever, Scioto Water has bought its water from Water 1 in order to supply customers; it does not produce water. In the early 1980's, Water 1 and Scioto Water modified their water purchase agreement to lower Scioto Water's maximum usage. However, as Scioto Water consistently has bought additional water since the date of the agreement, Water 1 has added surcharges to the cost of Scioto Water's additional water.

In 1989, Water 1 participated in a Farmers Home Administration program permitting bond issuers to buy back their government debt for a discounted amount. Water 1 refinanced its obligations through Star Bank and is no longer indebted to the federal government.

In the early 1990's, Scioto Water got approval for Farmers Home Administration loans for development of a wellfield two miles upstream from Water 1's wellfield and for a surface water treatment plant. Water 1 applied for a declaratory judgment, temporary restraining order, and an injunction, alleging that Scioto Water's project will harm Water 1's system and that the competition violates 7 U.S.C. § 1926(b). Water 1 alleged other federal and state law claims that are not at issue. Scioto Water moved to dismiss the complaint, and the district court concluded that it failed to state a claim upon which relief could be granted.

Title 7 U.S.C. § 1926, as part of the Consolidated Farm and Rural Development Act, governs federal loans made to water and waste facilities. Under this provision, the Secretary of Agriculture is authorized to make or insure loans to associations for water conservation, use, development, and control projects, among other purposes. Section 1926(b) protects borrowing associations by providing that

> [t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise or similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such associ-

ation to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

In *City of Madison, Mississippi v. Bear Creek Water Ass'n*, 816 F.2d 1057, 1060 (5th Cir.1987), the Fifth Circuit explained that there are "two congressional purposes behind § 1926:(1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and (2) to safeguard the viability and financial security of such associations (and [Farmers Home Administration's] loans) by protecting them from the expansion of nearby cities and towns."

As part of the Omnibus Budget Reconciliation Act of 1986, the Farmers Home Administration was required to sell some of the bonds it had acquired under the Consolidated Farm and Rural Development Act. *See Wayne v. Village of Sebring*, 36 F.3d 517, 526–7 (6th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 2000, 131 L.Ed.2d 1001 (1995). The Agricultural Credit Act of 1987 then required the Secretary to offer the issuer of such bonds the right to buy them back before the Secretary sold them to a third party. *See* Pub.L. 99–509, § 1001, 100 Stat. 1874, as amended by Pub.L. 100–233, § 803, 101 Stat. 1714 (1988)(*see* 7 U.S.C. § 1929a note "Sale of Rural Development Notes and Other Obligations") (referred to as "subsection (f)"). Also within the Agricultural Credit Act of 1987 was a provision known as "subsection (g)," stating that 7 U.S.C. § 1926(b), the curtailment prohibition, "shall be applicable to all notes or other obligations sold or intended to be sold" under the Agricultural Credit Act. *See* 7 U.S.C. § 1929a note ("Applicability of Prohibition on Curtailment or Limitation of Service"). The issue before this court then is whether subsection (g)'s provision that § 1926(b) applies to "all" obligations "sold or intended to be sold" means that § 1926(b)'s protection extends to a bond issuer, such as Water 1, that buys back its own bonds from the Farmers Home Administration, effectively extinguishing them.

This question appears to be one of first impression in the federal courts. The only

reported decision directly on point comes from the Supreme Court of Colorado, which addressed this issue in *City of Grand Junction v. Ute Water Conservancy Dist.*, 900 P.2d 81 (Colo.1995). In that case, the rural water district had issued Farmers Home Administration bonds to finance growth in its system. It bought back its own bonds in 1988 pursuant to the same legislation that prompted Water 1's purchase of its bonds. The water district then brought a declaratory judgment action alleging that it maintained the exclusive right to provide water service, and it sought an injunction against the City's efforts to provide water service to annexed areas within the water district. Although the City argued that the water district's bond was discharged when the water district purchased it from the Farmers Home Administration, the Colorado court found that the water district's reacquisition of the bond did not discharge the debt, and that subsection (g) allowed the Farmers Home Administration to sell bonds without eliminating § 1926(b) protection for the issuer. Because subsection (g) extended § 1926(b) protection to "all notes or other obligations sold or intended to be sold" under the Agricultural Credit Act, the court concluded that § 1926(b) protection should continue even if the bond issuer purchased its own bonds. *Id.* at 92. The court believed that because subsection (f) gave bond issuers the "right of first refusal" before the Farmers Home Administration sold the bonds, and was placed in the same act with subsection (g), that Congress meant to create a "comprehensive scheme" that allowed bond issuers to maintain § 1926(b) protection even after they purchased their own bonds. *Id.* In reaching this conclusion, however, the court carefully observed that state law permitted a bond issuer to reacquire its own bond without extinguishing the debt. *Id.* at 93.

■ No other court has addressed the issue of whether a bond issuer that repurchases its own bonds may claim continued protection under 7 U.S.C. § 1926(b). In light of this scant case law, the plaintiff argues that bond issuers, such as itself, that exercised their right to buy back their bonds are entitled to the same § 1926(b) curtailment protection that is available to third-party bond

purchasers. Water 1 argues that the coupling of subsections (f) and (g) of the Agricultural Credit Act means that the bond issuer's right of first refusal incorporates the right to continued protection against curtailment. It relies on common law, stating that when a seller makes a "unilateral option contract" and receives an offer from a third party, it must make both the price and terms of the offer available to one with a right of first refusal. Citing *W. Texas Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1561–9 (5th Cir.1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991), Water 1 insists that it is therefore entitled to the same § 1926(b) protection that would have been available to a third-party purchaser of its bonds. *W. Texas Transmission*, however, concerned a natural gas supplier's right of first refusal to repurchase a pipeline, and applied Texas law to the terms of a particular contract.

Scioto Water first responds that Water 1 failed to raise the issue of the common law right of first refusal at the trial level and has therefore waived the issue. *Bannert v. Am. Can Co.*, 525 F.2d 104, 111 (6th Cir.1975), *cert. denied*, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). Then, addressing the merits, Scioto Water argues that Water 1 does not qualify for § 1926(b) protection. It first explains that the main purposes of the Agricultural Credit Act are to protect "the supply of running household water in rural areas" and to protect "the repayment of funds advanced for the implementation of such systems." *Rural Water Dist. No. 3 v. Owasso Utils. Auth.*, 530 F.Supp. 818, 823 (N.D.Okla.1979). It notes that in cases such as *Bear Creek, supra*, and *Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211 (10th Cir.1988), *cert denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), the infringing cities were found to have violated § 1926(b) only because the protected water districts were indebted to the Farmers Home Administration. Moreover, as the opinion in *Pinehurst Enterprises, Inc. v. Town of Southern Pines*, 690 F.Supp. 444 (M.D.N.C.1988), *aff'd*, 887 F.2d 1080 (4th Cir.1989), makes clear, the first element of a § 1926(b) violation is cur-

tailment or limitation of service provided by a "covered association," and to be covered, the association must be indebted to the Farmers Home Administration.

As well as arguing that Water 1 is not entitled to protection under § 1926(b) itself, Scioto Water contends that the Agricultural Credit Act did not alter Water 1's current ineligibility for curtailment protection. Scioto Water points out that Water 1's indebtedness to the Farmers Home Administration was marked "paid in full" and insists that the debt was thus discharged, not sold. We agree.

Finally, Scioto Water contends, correctly we conclude, that the decision in *Ute Water* is distinguishable. In that case, the Colorado court found that § 1926(b)'s protection extends to those that buy back bonds only if the bonds are reacquired "with the intent not to discharge the instrument." 900 P.2d at 92. The *Ute Water* court analyzed the question of intent and looked to Colorado law to determine whether the reacquisition of a bond discharged the debt. Unlike the loan documents in *Ute Water*, the loan documents in this case were marked "paid in full."

 We note that cases brought in federal court under 7 U.S.C. § 1926(b) have consistently emphasized the requirement of federal indebtedness to obtain § 1926(b) protection. When an issuer buys back its own bond and cancels the debt, however, it no longer qualifies as a debtor for § 1926(b) protection. This statutory interpretation is also faithful to one of the main legislative purposes in enacting § 1926(b)—safeguarding Farmers Home Administration loans. Although the government maintains an interest in providing affordable rural water service, its interest in protecting against competition diminishes as its loans are repaid. We also note that Water 1's reliance on the common law "right of first refusal" does not alter this outcome, which must be gleaned from the federal statutes themselves rather than from such sources as Texas common law.

In a well-reasoned opinion, the district court held that 7 U.S.C. § 1929a note, subsection (g), applies only to obligations sold by the Farmers Home Administration to third parties. It therefore concluded that Water 1, having repurchased its own bonds, was no longer entitled to the protection provided by § 1926(b) and had failed to state a claim for relief under that section of Title 7. As a result, the district court entered judgment for defendant Scioto Water. We AFFIRM that judgment.