PUBLIC WATER SUPPLY DISTRICT
NO. 10 OF CASS COUNTY,
Missouri, Respondent,

v.

CITY OF PECULIAR, Missouri,
Appellant.

No. WD 54531.

Missouri Court of Appeals,
Western District.

June 16, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court July 28, 1998.

James E. Thompson, Jr., Crouch, Spangler & Douglas, Harrisonville, for appellant.

Jeremiah D. Finnegan, Kansas City, Charles E. Hight, Harrisonville, for respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

The City of Peculiar ("Peculiar") appeals from an order of summary judgment against it and in favor of Public Water Supply District No. 10 of Cass County ("PWSD").

PWSD is engaged in the business of owning, operating, and maintaining a public water supply system in Cass County. Peculiar maintains and operates a municipal water supply system.

In 1983, PWSD issued three series of bonds, all of which were purchased by the United States of America acting through the Farmers Home Administration ("FmHA") of the United States Department of Agriculture. The bonds were to mature in 2018. With the proceeds, PWSD constructed water lines and began to serve water to residents within its district.

On July 15, 1987, PWSD reacquired all the bonds from the FmHA. The bonds bore the following inscription: "Acknowledged as of the date hereof the full payment and discharge of the series bond as evidenced by the cancelled series bonds attached hereto." Each bond had the word "Cancelled" stamped across its face. In order to repurchase the bonds, PWSD issued Water System Revenue Refunding Bonds, Series 1987. These bonds were sold to various purchasers, none of whom were federal governmental agencies.

When PWSD was formed in the 1970's, its boundaries were adjacent to Peculiar. Since then, Peculiar has annexed parts of PWSD's original service areas. Consequently, the boundaries of PWSD and Peculiar now overlap in some places, and Peculiar is furnishing water service to some customers within the annexed area. As a result, PWSD filed a petition in the circuit court of Cass County requesting the court issue a permanent injunction prohibiting Peculiar from providing or offering water service within the service area of PWSD until November 1, 2018. The petition also requested Peculiar stop serving customers it has been serving in the water district "as soon as the plaintiff has taken the necessary steps to be able to serve such customers with water." Peculiar filed its answer and both parties subsequently filed summary judgment motions. The circuit court granted PWSD's motion for summary judgment and denied Peculiar's. Peculiar appeals that judgment.

In its first point, Peculiar alleges the trial court erred in granting PWSD's motion for summary judgment because PWSD does not have the exclusive right to service customers in the areas annexed by Peculiar. PWSD contends that, pursuant to federal statute, Peculiar can neither solicit nor serve customers in the overlapping service area.

One of the federal statutes at issue is 7 U.S.C. § 1926(b) which provides:

> The service provided or made available through such [water district] *shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body* or by the granting of any private franchise for similar service within such area *during the term of such loan* [i.e. FmHA bond purchase]; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event. (emphasis added)

7 U.S.C. § 1926(b) (1988).

There is no question, and the parties concede, that § 1926(b) prohibited the City of Peculiar from serving customers in PWSD's territory after PWSD became indebted to the federal government in 1983 and before it repurchased its bonds in 1987. The dispositive issue in Peculiar's Point I is whether PWSD is still afforded the protection of § 1926(b).

Our standard of review requires us to give Peculiar the benefit of all reasonable inferences from the record. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is solely an issue of law which we review *de novo* on the law and the record submitted. *Id.*

The Secretary of the United States Department of Agriculture is authorized to make or insure loans to "associations ... to provide for ... the conservation, development, use, and control of water ..." 7 U.S.C. § 1926(a)(1) (1988). Pursuant to this provision, PWSD sold three series of bonds to FmHA for total proceeds of $853,500.

The bonds were to mature in 2018. Pursuant to § 1926(b), quoted above, during the term of the loan, PWSD had the exclusive right to solicit and serve customers in its service area.

In 1986, Congress enacted the Omnibus Budget Reconciliation Act ("OBRA"). Section 1001 of OBRA required the Secretary of the Department of Agriculture to sell a portion of outstanding debt of rural water districts. Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, Title I, § 1001(a), 100 Stat. 1874 (1986). Congress subsequently amended OBRA with enactment of Pub.L. No. 100–233. This amendment required the Secretary of the Department of Agriculture to extend a right of first refusal to the water district before selling the debt of that district to third parties. Agricultural Credit Act of 1987, Pub.L. No. 100–233, Title VIII, § 803, 101 Stat. 1714 (1988). The amendment also added the following provision (hereinafter referred to as "subsection (g)"):

> (g) Applicability of Prohibition on Curtailment or Limitation of Service—Section 306(b) of the Consolidated Farm and Rural Development Act (7 U.S.C.1926(b)) shall be applicable to all notes or other obligations sold or intended to be sold under this section.

*Id.*

After the initial adoption of OBRA, FmHA sent notice to PWSD of its intent to sell the bonds PWSD had issued in 1983. PWSD chose to repurchase the bonds rather than have them sold to a third party. To finance the repurchase, PWSD issued Water System Revenue Refunding Bonds to various non-government purchasers, with total proceeds of $865,000.

PWSD contends it should still be afforded the protection of § 1926(b) because the repurchase falls within the plain language of subsection (g). It points out that subsection (g) states the service area protection is to be applicable to obligations "sold or intended to be sold under this section [meaning § 1001(a) of OBRA]." Pursuant to OBRA, FmHA sold the bonds PWSD had issued in 1983 back to PWSD. Therefore, PWSD reasons its transaction with FmHA falls within the meaning of subsection (g). Peculiar, on the other

hand, contends the fact that the bonds were marked "Cancelled" and "Acknowledged as of the date hereof the full payment and discharge of the series bond as evidenced by the cancelled series bonds attached hereto" is of paramount importance.

■ Section 1926(a) gives FmHA the authority to "make or insure" loans to rural water districts. Section 1926(b) provides service area protection to the rural water districts "during the term of such loan." PWSD extinguished its indebtedness to FmHA in July, 1987 when it repurchased the 1983 bonds, and FmHA returned them, marked "Cancelled." Based on the plain language of the statute, when the term of the FmHA loan ended, so did PWSD's § 1926(b) service area protection. While we recognize that the service territory protection provisions have historically enjoyed broad construction, *City of Grand Junction v. Ute Water Conservancy Dist.*, 900 P.2d 81, 94 (Colo.1995); *Bell Arthur Water Corp. v. Greenville Utilities Comm'n*, 972 F.Supp. 951, 959 (E.D.N.C.1997), where the language of the statute is clear and unambiguous, there is no room for construction. *State ex rel. Division of Transportation v. Sure–Way Transportation, Inc.*, 948 S.W.2d 651, 656 (Mo.App. W.D.1997).

PWSD nonetheless argues that subsection (g), passed in January, 1988, six months after its repurchase of the bonds from FmHA, was a "clarifying amendment" intended to apply to all transactions under OBRA, regardless of when they occurred. PWSD contends, therefore, that subsection (g) is applicable and extends § 1926(b) service area protection to its 1987 refinancing. PWSD cites no authority for its assertion that subsection (g) should be applied retroactively, and we have found none. However, even if we assume, *arguendo*, that subsection (g) is applicable to PWSD's July, 1987 transaction, we conclude that it does not extend service area protection to PWSD during the term of its 1987 bond indebtedness.

As noted previously, subsection (g) was an attempt by the legislature to ensure rural water districts would receive § 1926(b) protection if a loan were sold or was intended to be sold pursuant to OBRA. Of course, subsection (g) seems to anticipate a scenario where FmHA sells a rural water district's loan to a third party. The water district is still indebted, just not to the federal government. Subsection (g) extended § 1926(b) protection to those loans sold under OBRA. Neither subsection (g) nor any other statutory language mentions service area protection in the event a water district takes advantage of its right of first refusal and decides to refinance its loan through issuance of refund bonds or a conventional bank loan.

PWSD relies on the decision of the Colorado Supreme Court in *City of Grand Junction v. Ute Water Conservancy Dist.*, 900 P.2d 81 (Colo.1995). In 1988, the Ute Water Conservancy District opted to reacquire a bond, which was originally issued for $3 million, at a discount rate of $1.5 million. Ute "expressly structured the transaction to prevent a merger and to keep the bond outstanding, rather than simply extinguish the debt." *Id.* at 86. The Colorado Supreme Court ultimately concluded that Ute had not lost the protection of § 1926(b). *Id.* at 97. The Court stated in a footnote:

> The City [of Grand Junction] suggests that § 1926(b) requires an outstanding debt to the federal government. We reject this position because *§ 1926(b) requires only that the bond be outstanding,* it does not require that the District be indebted to the federal government. The unambiguous language of the OBRA, and its subsequent amendments under the ACA, make it clear that the protection provided for rural water districts under § 1926(b) remains even when the FmHA sells a note or bond in its possession to an entity other then the federal government ... (citation omitted). In fact, Congress enacted the OBRA, and subsequent amendments under the ACA, in order to ensure that the protection provided for in § 1926(b) would remain intact even after the FmHA sold the note or other obligation to a third party *or the issuer.* (emphasis added)

*Id.* at 95 n. 24. The Court in *City of Grand Junction,* when framing the issue it was to decide said, "[w]e must determine whether Congress intended that 'all ... obligations sold ... under this section' include reacquisi-

tions by an issuer of a bond held by the FmHA, *where the parties intended not to discharge the bond*" (emphasis added). *Id.* at 91. It then went on to hold that a rural water district refinancing its FmHA loan does not lose § 1926(b) protection "when the parties intended that the bond remain outstanding." *Id.* at 92. At nearly every stage of its analysis, the Colorado court noted that Ute structured the transaction so that the bond it was reacquiring remained outstanding. *Id.* at 85–86, 91–92, 95.

Likewise, in *City of Wetumpka v. Central Elmore Water Authority,* the Alabama Supreme Court found that two water districts, both with previous FmHA loans, that merged retained the protection of § 1926(b). *City of Wetumpka v. Central Elmore Water Authority,* 703 So.2d 907, 913 (Ala.1997). Redland Water Authority and Wallsboro–Santuck Water Authority merged to form Central Elmore Water Authority. *Id.* Both Redland and Wallsboro–Santuck had outstanding FmHA loans. *Id.* When the two entities merged, the loans were refinanced and the debt was passed on to Central Elmore. *Id.* However, the court specifically noted that "the bonds were not terminated." *Id.* The loan from FmHA was not satisfied, rather it was refinanced and the debt remained outstanding and was transferred to the new entity resulting from the merger. *Id.*

Neither *City of Grand Junction* nor *City of Wetumpka* provides support for PWSD. In the case at bar, PWSD did not intend that the debt on the 1983 bonds remain outstanding. Instead, it issued a new series of bonds and sold them to various private parties to finance the repurchase and subsequent cancellation of the 1983 bonds. When faced with identical fact situations, where a rural water district refinances its FmHA loan and in the process completely extinguishes its debt on the bonds purchased by the government, other jurisdictions hold that § 1926(b) protection is lost.

Pursuant to the right of first refusal created by adoption of Pub.L. No. 100–233 in 1988, Scioto County Regional Water District No. 1 repurchased its bonds from FmHA. *Scioto County Regional Water District No. 1 v. Scioto Water, Inc.,* 103 F.3d 38, 40 (6th Cir.1996). The bonds were marked "paid in full." *Id.* at 42. The Sixth Circuit Court of Appeals held that Scioto had lost its § 1926(b) protection because it extinguished the debt on the original bonds. *Id.* The *Scioto* court then distinguished *City of Grand Junction* based on the fact that Ute did not extinguish its debt on its bonds. *Id.* *Scioto* notes that federal indebtedness is the key to § 1926(b) protection. *Id.* Although unnecessary to our decision, and while we agree with the general holding in *Scioto,* we nevertheless concur in the Colorado Supreme Court's specific holding in *City of Grand Junction* that indebtedness to a non-government entity does not preclude § 1926(b) protection where the non-government entity purchases a loan or other obligation from FmHA under the OBRA provisions. *City of Grand Junction,* 900 P.2d at 96.

The federal court for the Northern District of Iowa also distinguished *City of Grand Junction,* in finding Rural Water System No. 1 ("RWS") lost its § 1926(b) service area protection. *Rural Water Sys. No. 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1523 (N.D.Iowa 1997). RWS repurchased and extinguished its debt from the FmHA in September 1988. *Id.* The loan was marked "paid in full." *Id.* at 1502. In a footnote, the court acknowledged the Colorado decision and pointed out that, had RWS repurchased its loan, but structured the transaction so that the debt was not extinguished, the result may have been different; however the court declined to speculate as to whether it would follow the *City of Grand Junction* decision. *Id.* at 1523 n. 13.

We too decline to speculate as to how our holding might be different had PWSD structured its bond repurchase in the same fashion Ute Water Conservancy District did. Ultimately, we need not even rely on the supporting case law from Iowa and North Dakota because the statute at issue is clear and unambiguous. In order for § 1926(b) to afford a water district protection, the water district must have some of the balance of some loan or other obligation, originally made or insured by FmHA under § 1926(a), still outstanding. If a water district, like PWSD did not have a right to § 1926(b)

protection because it ended the term of its loan, then the passage of subsection (g) did not create a new right to protection that did not otherwise exist under § 1926(b). We see a substantial difference between FmHA selling a loan, where the obligation on the original loan instrument remains; and FmHA extinguishing a water district's obligation on the original lending instrument, be it a bond or other type of loan. In the case at bar, PWSD has no obligation whatsoever to the federal government or any other entity on the 1983 bonds. PWSD's debt on those bonds has been cancelled. The plain language of § 1926(b) provides a water district with service area protection "during the term of such loan." The term of PWSD's loan has ended, and its service area protection under § 1926(b) ended simultaneously.

Accordingly, we find the trial court erred in granting PWSD's motion for summary judgment, thereby enjoining Peculiar from soliciting or servicing customers in the overlap area until November 1, 2014.

■ Peculiar phrases its second point on appeal in terms of trial court error in failing to grant its motion for summary judgment. While neither party raises the issue, we observe that generally, the denial of a motion for summary judgment is not subject to appellate review. *Judy v. Arkansas Log Homes*, 923 S.W.2d 409, 414 (Mo.App. W.D. 1996). This rule applies even if the denial occurs at the same time summary judgment is granted to the other party. *Jones v. Landmark Leasing, Ltd.*, 957 S.W.2d 369, 373 (Mo.App. E.D.1997). Thus, we decline to review the denial of Peculiar's motion for summary judgment.

■ Nonetheless, since one of the issues raised within point II will recur on remand, for the sake of judicial economy, we will address whether Peculiar must comply with § 247.170 before it can service inhabitants within the annexed areas of PWSD's district. Peculiar argues that Missouri law authorizes it to furnish water service to its residents even if they are located within a water supply district. It does not contend that it has the exclusive right to service customers in the

subject area, but rather that it is permitted to compete with PWSD for customers in the area.

Section 91.450[1] provides:

Any city of the third or fourth class, and any town or village, and any city now organized or which may hereafter be organized and having a special charter, ... shall have power to erect or to acquire, by purchase or otherwise, maintain and operate waterworks ... which are hereby declared public utilities.

Sections 91.010 and 91.050 give cities the authority to serve their inhabitants with water and to contract to serve persons and corporations beyond the city limits.

Chapter 247 governs public water supply districts. Section 247.010 declares that the purpose of §§ 247.010 to 247.220 is "to make possible ... conveniences in the use of water, ample in quantity for all needful purposes and pure and wholesome in quality, furnished from common sources of supply to many inhabitants of our state now denied such privileges...." Section 247.030 provides that the territory of a public water supply district shall be contiguous and may take in "cities that do not have a waterworks system." When a part of a district's service area is annexed by a city, § 247.160.1 permits the district to contract with the city for water service to the annexed area, or to lease, sell, or convey any of its water mains, plant or equipment to the city. If the water district and the city cannot reach an agreement, § 247.170 provides a procedure for detachment of the annexed area from the water district under the circuit court's supervision.

In *Mathison v. Public Water Supply Dist. No. 2 of Jackson County*, 401 S.W.2d 424 (Mo.1966), the Court stated:

It is apparent from our analysis of those sections of Chapter 247 applicable to county water supply districts that the legislature intended that such districts, at the time of their organization and thereafter, serve only those areas not otherwise served with water. Otherwise the legislature would not have by implication in

1. All statutory references are to RSMo 1994, unless otherwise noted.

§ 247.030 excluded from the initial territory of the district those cities having a water supply system; nor would the legislature have provided a method (§ 247.170) whereby the city could, as it grew, acquire the assets of a district lying within an area annexed by the city, without the consent or agreement of the district. *It is obvious that the legislature did not intend that both the city and the district distribute water in the same area at the same time, otherwise it would have defeated the purpose expressed in § 247.010.*

*Id.* at 431 (Emphasis added). The *Mathison* Court went on the hold that the water district did not have the exclusive right to serve the area of the district lying within the corporate limits of a city with a waterworks system.

More recently, this court addressed the identical argument that Peculiar here makes. In *Public Water Supply Dist. No. 16 v. City of Buckner,* 951 S.W.2d 743 (Mo.App. W.D. 1997), the City of Buckner annexed a tract of land lying within the water district. The district sought an injunction against the City from extending the City's water service into the annexed area without first complying with the provisions of § 247.170. The trial court dismissed the petition and the district appealed. On appeal, the City argued that § 247.170 is permissive, not mandatory, and that it had a right to supply water to its citizens without regard to the district's authority. We rejected the contention, stating:

> Were the provisions of § 247.170 optional, the annexing city could involuntarily acquire a water district's rights to revenue—whether fees acquired through services currently provided to the acquired area or tax revenues based on the valuation of the property—to the detriment of the water district's other customers or water district bondholders.... The statute mandates consideration of annexation's effect on the entire water district. This is manifested in the statute's requirement of an approving vote of the entire water district and of supervision by the circuit court of money payments to protect the interests of the water district bondholders. *The General Assembly intended to allow a city to acquire water supply rights to a tract in a district's territory, but it obligated the city to obey the procedures for acquiring those rights set out in § 247.170.*

*Id.* at 745 (Emphasis added). *City of Buckner* is directly on point. In order to service inhabitants in the annexed areas that it has not previously serviced, Peculiar is obligated to comply with the procedures for acquiring the right to service such area set out in § 247.170.

The trial court's entry of summary judgment in favor of PWSD is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.