Floyd (Butch) ALLEN and Yvonne D.
Allen, his wife, Respondents,

v.

PUBLIC WATER SUPPLY DISTRICT
NO. 5 OF JEFFERSON COUNTY,
MO, Appellant.

No. ED 75481.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 23, 1999.

Louis Jerry Weber, Thurman, Howard, Weber, Senkel & Norrick, L.L.C., Hillsboro, for appellant.

Kurt D. Breeze, Dodson, Breeze, Kister, Roberts & Millan, L.C., Festus, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Public Water Supply District No. 5 of Jefferson County, MO, ("District"), appeals from the judgment of the trial court allowing Floyd Allen and Yvonne Allen, ("landowners"), to detach their land from appellant pursuant to section 247.031, RSMo 1994.[1] We affirm.

Landowners are owners of two tracts of real estate lying within District's territory. The two tracts comprise 26 acres of land. By two separate consent annexations, on June 16, 1997, and on April 20, 1998, the City of De Soto annexed landowners' two separate, but contiguous tracts of land. District did not provide water service to the land prior to the annexation. The land contained no water works, water supply system, facilities, nor any tangible real or personal property belonging to the District. District has no outstanding general obligation or special obligation bonds that affected the land. The land was undeveloped and had no voters living within it.

On August 25, 1998, landowners filed a petition for detachment of their land from District pursuant to section 247.031. The court ordered publication of the notice of the petition for three consecutive weeks in the *Jefferson County Watchman*. After the filing of the petition, six voters and landowners, Board members of the District, filed objections to detachment of landowners' land from District's territory. On November 18, 1998, the trial court ordered the land to be detached from District's territory. District appeals.

District raises two points on appeal. District argues the trial court erred: 1) in ordering landowners' land to be detached and in finding that the detachment will not adversely affect the remainder of the District; and 2) in allowing landowners to detach their land pursuant to the provisions of section 247.031, rather than the mandatory detachment provisions of section 247.170.

Appellate courts will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo.banc 1976).

■ In its first point, District argues the trial court erred in ordering the detachment of landowners' land from it and in finding the detachment will not adversely affect the remainder of the District. District argues there was no substantial evidence to support the order and the judgment was against the weight of the evidence, in that the only evidence presented on the issue of adverse effect showed the District will suffer loss of fu-

---

1. All statutory citations are to RSMo 1994, unless otherwise indicated.

ture water revenue and a loss of land. We disagree.

Section 247.031.1 partially provides: "[t]erritory included in a district that is not being served by such district may be detached from such district provided that there are no outstanding general obligation or special obligation bonds. . . ." Section 247.031.4 partially provides; " if the court finds that the detachment will be in the best interest of the inhabitants and landowners of the territory to be detached and will not adversely affect the remainder of the district, it shall approve the detachment and grant the petition."

The trial court found that detachment would be in the best interests of the landowners because of the following:

A.  The detachment would avoid duplication of services by consolidating the water service into the City, which provides police and fire protection for the tract in question.

B.  The utilization of district water service, within the tract would cause difficulty concerning the measurement of costs for sewer service provided by the City in light of the lack of current metering agreement between the District and City.

C.  The cost to connect to City facilities, taking into account additional development and engineering and permitting costs, which would have to be incurred by the land owner, is less than the connection cost to the District's adjacent facilities.

D.  Based upon mandatory subdivisions restrictions in place for the tract as it lies within the City and for constructions costs to comply with City code would cause the owner to incur unnecessary developmental costs when compared to district connection requirement.

E.  There would be no need to acquire private easements for connection purposes to City facilities.

F.  That the cost of water to the landowner from the City would generally be lower than the cost of water from the District.

The trial court found that detachment would not adversely affect the remainder of the District because of the following:

A.  The District is not currently supplying the area and has no physical facilities within the area present or proposed.

B.  The District would lose no tax revenue by reason of the detachment.

C.  The area to be attached is minuscule in comparison to the balance of the territory contained in the District and the impact on the District's ability to generate future revenues would be de minimus.

Based upon the above findings and conclusions, we find the trial court did not abuse its discretion. There are no residents or voters in the detached area. District did not have any customer and did not derive any tax revenue from the detached area. District did not have any outstanding general obligation or special obligations bonds. District had no facilities, water works, pipelines, and wells within the detached area. The detachment involved only 26 acres of District's territory of about 30 to 40 square miles approximately. District projected income from contingent future homeowners will not substantially affect its annual budget.[2] Thus, we find sufficient evidence existed to support the trial court's finding that detachment would be in the best interests of the landowners and would not adversely affect the remainder of the District.

■    In its second point, District argues the trial court erred in allowing landowners to detach their land from it pursuant to

---

2.  Appellant's projected income from contingent future homeowners was $13,382.40 and it has an annual budget of $600,000, representing approximately only 2% of the current budget of the District.

the provisions of section 247.031 because the trial court ignored the mandatory detachment provisions of section 247.170. Appellant argues that section 247.170 is the controlling statute in this case. We disagree.

In construing statutes, court determines legislative intent from the language used in the statute and considers words in their plain and ordinary meaning, recognizing the law favors a statutory construction that tends to avert an unreasonable result. *Long v. Seely*, 975 S.W.2d 208, 210 (Mo.App. E.D.1998). Appellate courts presume the legislature does not enact meaningless provisions. *State v. Moore*, 952 S.W.2d 812, 813 (Mo.App. E.D. 1997). Courts presume the legislature acts with the knowledge of statutes involving similar or related subject matters. *Moore v. Missouri–Nebraska Exp., Inc.*, 892 S.W.2d 696, 712 (Mo.App. W.D.1994). "When enacting changes to statutes, the legislature is presumed to understand the state of the law at the time of its enactment." *Mills v. Director of Revenue*, 964 S.W.2d 873, 875 (Mo.App. E.D.1998). The term "shall" is used in laws, regulations, or directives to express what is mandatory. *U.S. Cent. Underwriters v. Hutchings*, 952 S.W.2d 723, 725 (Mo.App. E.D.1997). "Use of the word 'may' in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power." *State ex rel. Nixon v. Boone*, 927 S.W.2d 892, 897 (Mo.App. W.D. 1996).

Chapter 247 provides two independent procedures for detachment in sections 247.031 and 247.170. Section 247.031.1 provides:

Territory included in a district that is not being served by such district *may be detached* from such district provided that there are no outstanding general obligation or special obligation bonds, or if any such bonds are outstanding, that the written consent of the holders thereof is obtained, except such consent shall not be required for special obligation bonds if the district has no waterlines or other facilities located within any of the territory detached. Detachment may be made by the filing of a petition with the circuit court in which the district was incorporated. The petition shall contain a description of the tract to be detached and a statement that the detachment is in the best interest of the district or the inhabitants and property owners of the territory to be detached, together with the facts supporting such allegation. The petition may be submitted by the district acting through its board of directors, in which case the petition shall be signed by a majority of the board of directors of the district. The petition may also be submitted by voters residing in the territory sought to be detached. If there are more than ten voters in such territory, the petition shall be signed by five or more voters residing in the territory; if there are less than ten voters residing in such territory, the petition shall be signed by fifty percent or more of the voters residing in the territory. In the event there are no voters living within such territory proposed to be detached, then the petition may be submitted by owners of more than fifty percent of the land in the territory proposed to be detached, in which case said petition shall be signed by the owners so submitting the petition.

[Emphasis added].

Section 247.170.1 provides:

Whenever any city owning a waterworks or water supply system extends its corporate limits to include any part of the area in a public water supply district, and the city and the board of directors of the district are unable to agree upon a service, lease or sale agreement, or are unable to proceed under section 247.160, then upon the expiration of ninety days after the effective date of the extension of the city limits, that part of the area of the district included within the corporate

limits of the city *may be detached* and excluded from the district. . . .

[Emphasis added].

Section 247.031 was enacted in 1988. Section 247.170 was originally enacted in 1949 and was last amended in 1995. We presume that the legislatures were aware of section 247.031 before its last revision of section 247.170 in 1995. Currently, the two statutes do not reference each other and neither of the statutes constrains nor limits the application of the other statute. Nothing in the statutes indicate the exclusivity of either statutes and the statutory provisions do not set forth conflicting procedures to be followed. Furthermore, the statutes used the permissive language of "may be detached" in contrast to the mandatory language of "shall." Thus, we do not read either of the statutes as being mandatory or preemptive of the other.

Section 247.031 provides a statutory right to a landowner to detach its land from a district if certain conditions are met, and it provides certain procedures to follow in order to accomplish this task. The water district or voters residing in the territory sought to be detached, also may petition for detachment pursuant to section 247.031. This detachment is possible under this section, so long as the territory is not being served by the district, and there are no outstanding general obligations or special obligation bonds.

In the case at bar, landowners after annexation, decided to exercise their statutory rights under section 247.031. As the trial court found, landowners have met all the conditions and procedures required. Thus, we find that the trial court did not err in allowing landowners to detach their land pursuant to the provisions of section 247.031, because the existence of a detachment procedure under section 247.170 does not preclude landowners from exercising their statutory rights under section 247.031.

Furthermore, District argues that *Public Water Supply v. City of Buckner,* 951 S.W.2d 743 (Mo.App. W.D.1997) and *Public Water Supply v. City of Peculiar,* 971 S.W.2d 849 (Mo.App. W.D.1998), which required the respective cities to comply with the provisions of section 247.170 controls. District argues that both cases hold that the procedures set forth in section 247.170 are mandatory and that the cities must comply with section 247.170 before it can supply water to the annexed tracts. We disagree.

Both *Buckner* and *Peculiar* are distinguishable from the present case because the issues addressed by both cases are different from the issue before this court. The issue in both cases was whether the cities are required to comply with section 247.170 before they can supply water to an annexed territory. We note that we do not address this specific issue of whether the City of De Soto is required to comply with section 247.170 before it can supply water to the annexed land because it is not the issue before this court. The issue in the present case is essentially whether section 247.170 precludes the landowners from exercising their statutory rights to detach their land pursuant to section 247.031. Because the issue in the case at bar differs from the issue discussed in *Buckner* and *Peculiar,* we conclude that both *Buckner* and *Peculiar* are inapplicable.

Based on the foregoing, the judgment of the trial court is affirmed.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.