PUBLIC WATER SUPPLY DISTRICT
NO. 1 OF BUTLER COUNTY,
Missouri, Appellant,

v.

CITY OF POPLAR BLUFF and John
Dunivan, Clerk of Butler County,
Respondents.

No. 22778.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 29, 1999.

Application for Transfer and Motion for
Rehearing Denied Jan. 20, 2000.

L. Joe Scott, Paul A. Kidwell, Scott, Kidwell & Scott, Poplar Bluff, for appellant.

Wallace L. Duncan, City Atty., Poplar Bluff, for respondents.

KERRY L. MONTGOMERY, Presiding Judge.

Public Water Supply District No. 1 of Butler County ("District") appeals from a judgment in favor of the City of Poplar Bluff ("City"). District owns, operates, and maintains a public water supply system. City maintains and operates a municipal water supply system. In October of 1997, District filed suit alleging that City had unlawfully annexed areas in order to extend its water service boundaries. District sought judgment declaring City's actions unlawful, prohibiting City from moving forward with pending and future annexations, and awarding monetary relief.

The matter was presented to the trial court upon stipulated facts. District was formed under chapter 247 of the Missouri

Revised Statutes. The original funding for District to develop and construct its waterworks system was obtained from the federal agency formerly known as the Farmer's Home Administration ("FmHA"). District received the financing pursuant to 7 U.S.C. § 1926(a), authorizing federal loans to rural water systems.

Congress subsequently enacted the Omnibus Budget Reconciliation Act ("OBRA") of 1986 requiring FmHA to sell loans and other obligations made to rural water districts pursuant to 7 U.S.C. § 1926(a). The next year Congress amended OBRA to require FmHA to extend a right of first refusal to a water district before selling that district's debt to a third party. Thereafter, FmHA notified District of its intent to sell District's FmHA debt to a third party.

After receiving this notice, District opted to repurchase its own debt. In 1990, District issued general revenue bonds with proceeds totaling $880,000 to fund the debt repurchase. District refinanced this debt in 1995 as part of a $3,000,000 bond issue. The 1990 repurchase extinguished all debt owed by District to the federal government.

From the years 1993 through 1998, City undertook a number of voluntary annexations to extend its municipal territory pursuant to § 71.012.[1]

One series of annexations extended City's corporate limits westward and City provided water service to the encompassed schools, residences, businesses and a church. City also extended its water lines beyond its corporate limits to serve an elementary school.

A second area of annexation extended City's southern boundaries to the municipal golf course and a country club. City only provides water to the golf course. District provides water lines to some residences and businesses in the annexed area, with the remainder being serviced by private wells.

The third area of annexation extended City's boundaries north to include the Shadowbrook Subdivision. City serves all residences in the subdivision. District services all other businesses and residences in the area. City concedes it failed to initiate detachment proceedings pursuant to § 247.170 prior to any of the annexations.

On October 24, 1997, District filed a three-count petition against City. In Count I, District alleged City's annexations violated the Territorial Protection Provisions of federal law. In Count II, District claimed City's prior and pending annexations were unauthorized under state law. In both Counts I and II, District sought judgment declaring the annexations unlawful and unauthorized, and enjoining City from pursuing pending and future annexations. In Count III, District sought monetary compensation for any damages as a result of the allegedly unlawful annexations.

After a hearing on the matter, the trial court determined District was not entitled to injunctive relief under either federal law or state law. The trial court entered judgment in favor of City on Counts I and II, but noted that District could pursue its claim for damages under Count III.[2] This appeal followed.

In its two-point appeal, District contends the trial court misstated or misapplied applicable federal and state law when denying the declaratory and injunctive relief sought. Review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32;

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

2. The trial court determined there was no just reason or cause for delay and designated the judgment final for purposes of appeal pursuant to Rule 74.01(b).

*Higgins v. Olson,* 991 S.W.2d 216, 218 (Mo.App.1999).

■ In Point I, District alleges the trial court erred in failing to declare the annexations made by City void as a violation of federal law. District maintains the trial court misapplied the law because the stipulated facts "established that ... District was entitled to the territorial protection provided by federal law prohibiting such annexations due to the fact said District obtained its initial financing for the construction of its waterworks system from the FmHA."

District claims it has the exclusive right to service customers in the annexed areas based upon 7 U.S.C. § 1926(b), which provides:

The service provided or made available through any such [water district] shall not be curtailed or limited by inclusion of the area served by such [water district] within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area *during the term of such loan;* nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the [water district] at the time of the occurrence of such event.

(Emphasis added).

In 1986, Congress enacted OBRA, requiring the Secretary of the Department of Agriculture to sell a portion of the outstanding debt of rural water districts. Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, Title I, § 1001(a), 100 Stat. 1874 (1986). Thereafter, Congress amended OBRA with the Agricultural Credit Act of 1987 ("ACA"), requiring the Secretary to extend a right of first refusal to the water district prior to selling the district's debt to a third party. Agricultural Credit Act of 1987, Pub.L. No.

100–233, Title VIII, § 803, 101 Stat. 1714 (1988). This amendment included a provision, referred to as "subsection g," that extended the protections of § 1926(b) as follows:

(g) Applicability of Prohibition on Curtailment or Limitation of Service—Section 306(b) of the Consolidated Farm and Rural Development Act (7 U.S.C. 1926(b)) shall be applicable to all notes or other obligations sold or intended to be sold under this section.

*Id.*

The parties agree that the unambiguous language of § 1926(b) afforded District protection from encroachment upon its service territory from the time it received FmHA funds until District repurchased the debt in 1990. The issue is whether subsection g extended this protection after District repaid FmHA and extinguished its loan obligations to the federal government.

District argues that subsection g extends the territorial protection provisions to those water districts that have refinanced their loans because the debt is still in existence even though it is no longer owed to the federal government. District acknowledges this argument has already been rejected by the Western District in *Public Water Supply District No. 10 of Cass County v. City of Peculiar,* 971 S.W.2d 849 (Mo.App.1998), but hopes to persuade this Court to come to the opposite conclusion. We decline to do so.

In *City of Peculiar,* the city decided to repurchase its debt from FmHA rather than have it sold to a third party. The city reacquired all of the bonds from FmHA and issued bonds to finance the repurchase. *Id.* at 850–51. The city no longer owed any money to the federal government. *Id.* The water district argued it was still afforded the protections of § 1926(b) because the repurchase fell within the plain language of subsection g.[3] *Id.* at 851.

**3.** Although the water district repurchased its debt prior to the passage of subsection g, the

court of appeals assumed, *arguendo,* that sub-

The court determined the water district did not intend that the original debt remain outstanding and therefore found subsection g inapplicable, noting:

> When faced with identical fact situations, where a rural water district refinances its FmHA loan and in the process completely extinguishes its debt on the bonds purchased by the government, other jurisdictions hold that § 1926(b) protection is lost.

*Id.* at 853.[4]

District cites two cases, *City of Wetumpka v. Central Elmore Water Authority*, 703 So.2d 907 (Ala.1997), and *City of Grand Junction v. Ute Water Conservancy Dist.*, 900 P.2d 81 (Colo. banc 1995), as authority for its theory that it retained § 1926(b) protections after repurchasing its debt. The Western District in *City of Peculiar* found these cases factually distinguishable from the circumstances before it.

In both *City of Wetumpka* and *City of Grand Junction*, the water districts reacquired the debt to FmHA, but structured the transactions in a manner to keep the bond outstanding rather than simply extinguishing the debt. *City of Peculiar*, 971 S.W.2d at 853–854. In *City of Wetumpka* the court specifically noted that "the bonds were not terminated." 703 So.2d at 913. In *City of Grand Junction* the court explained that the city structured the transaction so that the bond it was reacquiring remained outstanding. 900 P.2d at 85–86, 91–92, 95. The Western District concluded:

> We see a substantial difference between FmHA selling a loan, where the obligation on the original loan instrument remains; and FmHA extinguishing a water district's obligation on the original lending instrument. . . . In the case at

bar, [the water district] has no obligation whatsoever to the federal government or any other entity on the [original] bonds. [The water district's] debt on those bonds has been cancelled. The plain language of § 1926(b) provides a water district with service area protection "during the term of such loan." The term of [the water district's] loan has ended, and its service area protection under § 1926(b) ended simultaneously.

*Id.* at 854.

We conclude that the circumstances in the instant case are analogous to those found in *City of Peculiar*. District opted to repurchase its own debt and extinguish all obligations to the federal government. No obligations to third parties or other federal agencies were created on the original debt. District makes no suggestion that it attempted to structure the repurchase transaction in a manner to keep the original loan alive. The loan ended, and with it the service area protections of § 1926(b). We cannot say the trial court misapplied federal law when denying District's request for an injunction. Point I is denied.

■■■ In its second point on appeal, District claims the trial court misapplied or misstated state law when failing to require City to comply with the procedures established by §§ 247.160 and 247.170 with regard to detachment of territory included within a public water supply district upon annexation by a municipality. District argues that City's failure to comply with the detachment procedures under these sections made the annexations void and it was entitled to "the issuance of . . . an injunction prohibiting further annexations unless the City complies with the law." [5]

section g should be applied retroactively. *Id.* at 852.

4. *See Rural Water Sys. No. 1 v. City of Sioux Center*, 967 F.Supp. 1483, 1523 (N.D.Iowa 1997); *Scioto County Regional Water District No. 1 v. Scioto Water, Inc.*, 103 F.3d 38, 40 (6th Cir.1996).

5. On appeal, District also claims the trial court erred in failing to issue an injunction requiring City to initiate detachment proceedings in compliance with § 247.170. District acknowledges this relief was "not precisely what the District's Petition sought[.]" This Court will not consider issues not presented

The trial court denied District's request to void the annexations based upon its interpretation of *Public Water Supply Dist. No. 16 v. City of Buckner*, 951 S.W.2d 743 (Mo.App.1997), and *City of Peculiar*, 971 S.W.2d at 854, the principal cases upon which District relies. The trial court read these cases as stating that § 247.170 "must be followed *if* a city wants to acquire the right to supply water in an annexed territory." The trial court determined that § 247.170 "is optional, and not mandatory, when a city does not seek the right to provide water service to residents within the annexed area."

The trial court went on to hold that the statute does not require the "voiding of the annexations" if City does provide water service to the areas in question. Instead, it concluded the annexations were valid, but City must follow § 247.160 or § 247.170 to obtain the right to provide water to customers within the annexed area. After concluding the annexations were not invalid under applicable statutes or case law, the trial court suggested damages would be the appropriate remedy for City's failure to comply with the statutes. District contends the trial court "misread" the holding in the applicable cases when concluding it could not declare the annexations void and issue an injunction against future annexations.

In *City of Buckner*, the city annexed and rezoned a tract of land that the public water supply district had planned to serve. The district sought an injunction preventing the city from extending its water service into the area without first complying with the requirements of § 247.170. 951 S.W.2d at 744. The city asserted that it

had no obligation to "detach" the annexed area pursuant to § 247.170 because the district had not supplied water to the area before annexation. *Id.* at 745. The trial court dismissed the petition.[6] The court of appeals reversed this decision and remanded the case.

The *City of Buckner* court noted that public water supply districts fall within the province of chapter 247. *Id.* Section 247.160.1 provides that whenever the territory of a public water supply district is included by annexation within the corporate limits of a municipality, that district may "lease, contract to sell, sell or convey, ... its water mains, plant or equipment" to the municipality. This section was enacted to enable a district to transfer the water distribution facilities in the annexed area to the city under circumstances that will protect the rights of the district's bondholders. *Id.* In the event that the city and the water district cannot reach an agreement, § 247.170 allows detachment of the annexed area from the water district pursuant to the circuit court's instruction and supervision. *Id.*

The city argued that the statute was permissive, and not mandatory, in cases where the water district does not serve customers and owns no lines or equipment in the annexed area. *Id.* The court disagreed, stating:

> Were the provisions of § 247.170 optional, the annexing city could involuntarily acquire a water district's rights to revenue—whether fees acquired through services currently provided to the acquired area or tax revenues based on the valuation of the property—to the detriment of the water district's ...

to the trial court. *State ex rel. Watkins v. Watkins*, 972 S.W.2d 609, 611 (Mo.App.1998). Under Count II, District prayed for an order (1) voiding the prior and pending annexations, and (2) enjoining future annexations of territory within the District's boundaries unless City complies with the law. The District did not request an injunction requiring the City to initiate detachment proceedings under § 247.170.

6. Although the trial court dismissed the petition for failure to state a claim, the court of appeals noted the trial court considered extraneous matters in deciding on the motion and treated the matter as a summary judgment. *City of Buckner*, 951 S.W.2d at 745.

bondholders.... The statute mandates consideration of annexation's effect on the entire water district. This is manifested in the statute's requirement of an approving vote of the entire water district and of supervision by the circuit court of money payments to protect the interests of the water district bondholders. *The General Assembly intended to allow a city to acquire water supply rights to a tract in a district's territory, but it obligated the city to obey the procedures for acquiring those rights set out in § 247.170.*

*City of Buckner*, 951 S.W.2d at 745. (Emphasis added) (footnote omitted). The court concluded that summary judgment was improper and remanded the case.

In *City of Peculiar*, 971 S.W.2d at 854–55, the Western District again addressed the issue of whether a city must comply with § 247.170 before it can serve inhabitants within annexed areas of a water supply district's territory. In this case, the city argued that Missouri law authorized it to furnish water service to its residents even if they are located within a water supply district. *Id.* at 854. The court rejected this argument in reliance upon *City of Buckner* and held that "[i]n order to service inhabitants in the annexed areas that it has not previously serviced, Peculiar is obligated to comply with the procedures for acquiring the right to service such area set out in § 247.170." *Id.* at 855. The case was reversed and remanded for further proceeding consistent with the opinion.

Although both of these cases hold that compliance with § 247.170 is mandatory, neither *City of Buckner* nor *City of Peculiar* stands for District's proposition that the trial court erred in failing to declare the existing annexations void and failing to issue an injunction against future annexations of territory within the District's

boundaries. In the instant case, the trial court concluded that City must follow the procedures of either § 247.160 or § 247.170 in order to provide water service to the annexed areas. The trial court did not suggest City could avoid compliance even though it is already serving some customers in these areas. The court only determined that the remedy requested by District, voiding the current annexations and enjoining future ones, was not available under the statutes or case law.

Like the trial court, we do not read *City of Buckner* nor *City of Peculiar* as requiring the relief requested by District. Neither case addressed the issue of whether (1) a city's annexation is void absent compliance with § 247.160 or § 247.170 or (2) whether an injunction against future annexations is appropriate. As an appealing party, District has the burden to demonstrate error. *State ex inf. Ashcroft ex rel. Plaza Properties, Inc. v. City of Kansas City*, 687 S.W.2d 875, 876 (Mo. banc 1985). District's cases do not demonstrate the trial court erred in the respect stated.

We only hold that the trial court properly applied the law in declining to void the annexations and enjoining future annexations of territory within the District's boundaries. We express no opinion on the relief available to District should no action be taken under the provisions of § 247.160 or § 247.170.[7]

The judgment is affirmed.

PREWITT, J., and GARRISON, C.J., concur.

---

7. Although not mentioned by the parties, we observe that a detachment proceeding under § 247.170.1(1) is instituted by "petition to detach" that is "signed by not less than twen-

ty-five voters within the water supply district" and filed in the circuit court of the appropriate county. Whether a city can institute an

action under this statute is a question left for future determination.