## JACKSON COUNTY PUBLIC WATER SUPPLY DISTRICT NO. I, Appellant,

v.

## ONG AIRCRAFT CORPORATION, a Corporation, City of Kansas City, Missouri, Ilus W. Davis, Successor to H. Roe Bartle, Mayor of Kansas City, Missouri, Hugh G. Carr, Director of Water, Kansas City, Missouri, and Earl Brosnahan, Respondents.

### No. 24337.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1966.

Application to Transfer Denied Jan. 9, 1967.

Charles W. Hess, of Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, Henry Andrae, Hendren & Andrae, Jefferson City, John L. Gaylord, Neil F. Cline, Kansas City, for respondent Ong Aircraft Corp.

Herbert C. Hoffman, City Counselor, Ned Bahr, Asst. City Counselor, Kansas City, for respondents City of Kansas City, Ilus W. Davis, Successor to H. Roe Bartle, Mayor of Kansas City, Missouri and Hugh G. Carr, Director of Water, Kansas City, Missouri.

Edward F. Aylward, Kansas City, for Earl Brosnahan Co.

FRANK W. HAYES, Special Judge.

The appellant, Jackson County Public Water Supply District No. 1, was organized under Chapter 247 (all statutory references are to RSMo 1959 and V.A.M.S., unless otherwise indicated), for the purpose of furnishing water to users within its district. The respondents are the City of Kansas City, Missouri, Ilus W. Davis, Mayor, successor to H. Roe Bartle, Ong Aircraft Corporation, which is a developer of the subdivisions, Hugh Carr, Director of Water of Kansas City, Missouri, and Earl Brosnahan, a private contractor, building the subdivision for the Ong Aircraft Corporation.

The appellant brought this suit in the Circuit Court of Jackson County, Missouri, to enjoin the respondents from constructing and using water supply lines in a subdivision being developed in Jackson County, Missouri, known as "Crossgates" which was located within the territorial boundaries of said appellant. The appellant claims that it has the exclusive right to supply water to that portion of the new subdivision which is within the boundaries of the water supply district. The trial court made findings of fact and conclusions of law and entered judgment denying a permanent injunction against the respondents. The appellant appealed to the Supreme Court of Missouri, which court transferred the cause to this court on the ground that it did not have jurisdiction because the record did not affirmatively disclose that the amount in dispute exceeded $15,-000.00.

Many motions were filed by both parties at various steps of this proceeding, but as none of them were dispositive of any issue involved in this appeal, they will not be discussed herein. The evidence offered by each party covered a wide range but only such evidence as we believe is relevant and material will be referred to herein. The appellant will be referred to as the District and respondent, Kansas City, Missouri, as the City.

The evidence discloses that by reason of the extension of the city limits of Kansas City, Missouri, large portions of the District's original service area have been detached and turned over to the City. After each detachment, the boundaries of the District were re-established to conform to the City's city limit boundary. The most recent detachment occurred pursuant to contract of July 7, 1961, between the District and the City, and the decree of the Circuit Court of Jackson County, Missouri, validated such action as provided by law.

The final annexation and detachment established a boundary line generally along 119th Street which is the southern boundary of the City and the northern limits of the City of Grandview. Respondent Ong Aircraft Corporation is the owner of an eighty acre tract of land that lies approximately one half on each side of the 119th

Street dividing line. This tract, known as Crossgates, has been subdivided into 372 building lots of which 195 are north of the boundary line in the City and 177 are south of the line in the City of Grandview, Missouri, and within the District. The 195 lots in the City are not involved in this controversy. The 177 lots in the City of Grandview are.

On October 18, 1962, a contract was entered into between the Ong Corporation and the City by the terms of which the City agreed to supply water to the 177 lots located in Grandview through the mains to be provided by Ong Corporation. Work was begun under the contract and on December 6, 1962, the District filed its injunction suit against respondents claiming the exclusive right to supply water to the Grandview portion of the subdivision by virtue of the contract with the City dated July 7, 1961, and pursuant to the provisions of Chapter 247, under which the District was organized.

It is contended by the District that the Court erred in holding that the agreement of July 7, 1961, did not create areas of mutual exclusiveness for the serving of water. The agreement of July 7, 1961, was approved, under the provisions of Section 247.160, by the Circuit Court of Jackson County, Missouri, in Cause No. 83533. The District has failed to point out and this court has failed to find any express provision in said agreement which gives to the District any exclusive right to furnish water within the area of Crossgates subdivision lying within the City of Grandview. The decree of the Circuit Court dated July 28, 1961, approving the agreement does not mention any such express agreement nor give any such exclusive right to the District. The petition of the District for injunctive relief is not based on any such express agreement. The court finds that there is no express agreement between the District and the City giving the District exclusive right to sell water in the District.

■ There being no express written contract giving the District exclusive right to furnish and sell water in the District, can such contract be implied? The court is of the opinion that it cannot. Section 432.070 provides as follows:

"No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

Section 432.070, above, is construed in State ex rel. City of Mansfield, Missouri et al., v. Crain, Judge of the Circuit Court of Wright County, Missouri, Mo.App., 301 S.W.2d 415, the court saying at l. c. 419:

"The injunction petition also contains a general allegation that it relied upon the assurances and agreement * * * of the City of Mansfield that said city would not compete with Se-Ma-No during the term of the franchise and contracts. It is not alleged or contended in the brief that such assurance or agreement was in writing or by ordinance. Such a general allegation fails to state any ground for injunctive relief. Section 432.070 R.S.Mo.1949, V.A. M.S., requires that contracts made with a city must be in writing and duly executed as therein provided. It has been repeatedly held that the requirements of this section are mandatory, not directory, and that a contract not so made is void." (Citations omitted).

On the question of implied agreement, the same court, l. c. 418, has the following to say: " * * * The fundamental basis of the cause of action stated in the injunction petition is to the effect that the City of Mansfield, by the execution of the fran-

chise now owned by Se-Ma-No, and by executing the street lighting and pumping station contracts, *impliedly* agreed not to compete with the company in the transmission and distribution of electrical energy within said city for the term and duration of said franchise and contracts. The injunction petition does not allege, nor do the attached exhibits show, any *express agreement* that the franchise is *exclusive*, or that the city *expressly agreed not to compete* with Se-Ma-No. Under such circumstances, there can be no *implied* limitation upon the right of the City of Mansfield to construct and operate a power plant. Cases specifically so holding are Memphis Electric Light, Heat and Power Company v. City of Memphis, 271 Mo. 488, 196 S.W. 1113; City of Joplin v. Southwest Missouri Light Co., 191 U.S. 150, 24 S.Ct. 43, 48 L.Ed. 217 [127]; Kansas City Power and Light Co. v. Town of Carrollton, 346 Mo. 802, 142 S.W.2d 849. These cases review many other authorities on the subject." The court holds that there is no express or implied contract herein which would give any exclusive right to the District to furnish water in the District.

▮ Under this same point (Point I of its brief), the District for the first time injects into the case the doctrine of "prior jurisdiction". This assignment is not contained in the District's motion for new trial and is therefore not preserved for appellate review. Civil Rule 79.03, V.A.M.R., Mutual Finance Company, Inc., v. Auto Supermarkets, Inc., Mo.App., 383 S.W.2d 296; Wilson v. Murch, Mo.App., 354 S.W.2d 332; Dial v. Seven-Up Bottling Company, Mo., 373 S.W.2d 53.

Under Point II of its brief, the District contends that the trial court erred in not holding that the City's right to supply water beyond its corporate boundaries is conditioned upon compliance with terms of Section 386.250(7) and in failing to find that the City had failed to comply with that section. This assignment is not contained in the District's motion for new trial and is

therefore not preserved for appellate review. Civil Rule 79.03 V.A.M.R., Mutual Finance Company, Inc., v. Auto Supermarkets, Inc., Mo.App., 383 S.W.2d 296; Wilson v. Murch, Mo.App., 354 S.W.2d 332; Dial v. Seven-Up Bottling Company, Mo., 373 S.W.2d 53.

The District contends that Chapter 247 gives it exclusive right to supply water within its boundaries but does not point out what section gives it that exclusive privilege or prohibits the City from supplying water into the District. Section 91.050 provides as follows:

"Any city in this state which owns and operates a system of waterworks may, and is hereby authorized and empowered, to supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties."

▮ It is obvious that the above section authorizes the City to furnish water outside its corporate limits to persons and private corporations. The section does not prohibit the City from supplying water to persons or corporations in water districts. In fact, it does not limit or restrict where the City may supply water. If the legislature had intended to restrict the City as to where it could supply water, it could easily have done so by prohibiting it from entering water districts. Since Section 91.-050, above, does not restrict the areas where the City can supply water and Chapter 247 neither restricts the City from the area of the District nor gives the District an exclusive right to supply water, we find no statutory support for the District's contention.

▮ To support its position, much reliance by the District is placed on the use of the word "boundaries" in the statute. Of

course, the District has to have boundaries. So do cities, counties and states. The boundary simply designates the area comprised in the unit, whether it be district, city, county or state. As said in 11 C.J.S. Boundaries § 1, p. 538, "A boundary is a line or object indicating the limit or furthest extent of a tract of land or territory; a separating or dividing line between countries, states, districts of territory, or tracts of land. The term is used to denote the physical object which divides, as well as the line of division itself." There is nothing magical in the use of the word "boundary". It simply denotes the limits of the area involved. It has nothing to do as to whether the district has exclusive rights within its "boundary" or not. In section 91.050, supra, the words "corporate limits of such city" are used. These words mean the same thing as boundary of the city. That section expressly authorizes the City to supply water beyond the "corporate limits" or boundaries. The District produces no authority to prevent the City from entering the District or giving it the exclusive right to supply water therein.

■ The District contends that the trial court erred in finding that there is no actual or threatened irreparable harm caused by the action of respondents. Mr. Mark A. Lucas testified for the District that over a fifteen-year period he was connected with every bond issue the District floated and that the District was not rated by any investment service, but that the District had better than medium credit—a good credit; that their obligations, both general and special, have a ready market and are very much in demand. When questioned if the acts in issue would be detrimental or beneficial to the bondholders, he stated, "It definitely would affect the bondholder," but he did not state how and to what extent. He stated that when two thirds of the district in which customers were actually being served was surrendered by de-annexation the District's credit only suffered "slight damage". Obviously, if the de-annexation of two thirds of the district where cus-

tomers were being served only caused "slight damage" to the district, the loss of right to serve water to an area of only 41.59 acres not previously served and which remained within the district for taxing purposes, would not cause the district "irreparable damage".

A Mr. Bill T. Wall, investment banker, testified for respondents that general obligation bonds were payable from an unlimited ad valorem tax levied upon taxable property within the District and that special obligation bonds are payable solely from revenues of the water system after operation and maintenance expenses have been paid and that purchasers of these bonds look to the amount produced at the time the bonds are sold.

■ The evidence discloses that the tract involved here consists of 41.59 acres. Since this tract is not being annexed by the City and will remain in the District for tax purposes, no loss of revenue from general taxes will result. Having water furnished therein and the subdivision developed undoubtedly would enhance the value of the land therein and increase the amount of taxes collectible. The District in the past has never received any revenue and at present time is not receiving any revenue from this area because it has never had and does not now have any customers in the area. What revenue in the future would be available to the District in this area is purely conjectural and dependent upon too many contingencies to support a claim of irreparable damage. It cannot be said, therefore, with any degree of certainty, that the District has lost revenue by reason of the contract of October 18, 1962, between the City and Ong Aircraft Corporation. The boundaries of the District remain unchanged and the District's taxing power has not been curtailed. Considering all the evidence, there is no credible evidence of any present or future irreparable damage.

The court finds that the trial court's findings of fact are supported by the evidence and are correct; that its conclusions of law

are proper; and that under the law and the evidence, the District is not entitled to a permanent injunction against the respondents.

The judgment of the trial court denying the District's petition for a permanent injunction against respondents should be and is affirmed.

CROSS, P. J., and HOWARD, J., concur.

BLAIR, J., not participating.