MAL SPINRAD OF ST. LOUIS, INC.,
Plaintiff-Appellant,

v.

KARMAN, INC., Defendant-Respondent.

No. 48953.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 30, 1985.

Stuart R. Berkowitz, Clayton, for plaintiff-appellant.

Richard S. Bender, Clayton, for defendant-respondent.

KELLY, Judge.

Mal Spinrad of St. Louis, Inc. (hereinafter Spinrad) appeals from a judgment of the Circuit Court of St. Louis County, Missouri, in favor of Karman, Inc. (hereinafter Karman) after a jury verdict for Karman, the defendant in the trial court.

On appeal Spinrad contends that the two verdict-director instructions submitted to the jury by the trial court, sua sponte, on two counts of a four count petition,[1] after refusing two-verdict directors tendered to the trial court by Spinrad, assumed certain disputed facts and thereby misdirected the jury on the law of which the jury was to base its verdict to the prejudice of Spinrad. We agree and reverse and remand the cause to the trial court for a new trial.

Spinrad is part of a chain of five employment agencies situated in locations across the country limiting their placement activities to the garment industry. Karman is a manufacturer of western apparel. Spinrad brought this action for the payment of fees for placing two individuals, Armando Fernandez and Andy Holiman, with Karman.

Between 1978 and 1981 when Karman had an opening, its president, Sam Mandelbaum, or its vice-president, Sam's son Gary, would contact Spinrad by telephone and eleven or twelve other employment agencies, and describe the vacancies to be filled. Donald Berman, head of Spinrad's St. Louis office, testified that upon receiving a call he would send out a "blind" resume on each of the available applicants listed in its files as qualified for the position. These "blind" resumes did not contain the identity of the applicants nor their addresses; however, each resume described the applicant's qualifications and work history. If a "blind" resume interested Karman the Mandelbaums would request "contact" information on the applicant.

Gary Mandelbaum agreed that this was the general procedure, but testified that occasionally, at his request, the "contact" information would be sent to Karman after an initial telephone call.

When "contact" information was forwarded to Karman, it included the applicant's name, address and telephone number. It was sent on a standard form which contained the following statement on the upper left hand corner of the form:"

"Contact Form, An Agreement."

The form also contained the agency's fee schedule and further provided that the "contact" information supplied was "based on the understanding, with the applicant, and our understanding with you that your company will pay Mal Spinrad of St. Louis, Inc." Further down on the form the following statement appeared:

This fee schedule is applicable if the applicant is hired within (2) years ... for any position with your company ...

The fee was based upon a percentage of the applicant's starting salary, and was payable within ten working days following the first day of the employment of the applicant.

Count I of the Petition was an action to collect the employment fee for the hiring of Armando Fernandez, who entered the employment of Karman on September 19, 1981 as an engineer at a weekly salary of $480.77 a week. Count III was an action to collect the employment fee for the hiring of Andy Holiman who entered the employment of Karman on April 12, 1982, as plant manager at a weekly salary of $576.93.

While there was conflicting evidence, Spinrad's evidence was that Karman was sent a contract form on Fernandez on April 25, 1978 for the job of director of manufacturing at the Denver, Colorado plant. Subsequently a second contact form was sent to Karman concerning Fernandez on March 20, 1980. On November 3, 1981, Spinrad sent Karman a contract form on Holiman at Karman's request for a plant manager's position at Karman's plant in Fulton, Mississippi. On May 20, 1982, Spinrad learned

---

1. Counts II and IV of the petition, which were dismissed by appellant at the close of its case, were for account stated.

Fernandez was employed by Karman in El Paso, Texas, and on July 29, 1982, also learned that Holiman was employed by Karman as plant manager in El Paso, Texas. At time of trial Holiman was vice-president for Karman at its plant in Fulton, Mississippi, the plant in El Paso having been closed down. Karman had not notified Spinrad of either of these hirings.

After learning that Fernandez was employed by Karman, Donald H. Berman, vice-president and general manager of Spinrad sent an invoice to Karman for $6,250.00 on May 20, 1982 and subsequently telephoned Gary Mandelbaum, Karman's vice-president and requested payment of the fee. Also, after learning that Holiman had been hired, Spinrad sent Karman an invoice for $6,500.00 for its fee on the contact it had sent Karman on Holiman. These fees were arrived at based upon information furnished by Fernandez and Holiman concerning their salaries with Karman. Neither of these fees has been paid by Karman.

It was Karman's position at trial that although it received contact forms on both Fernandez and Holiman from Spinrad, it knew of both of these men prior to receiving the contact forms and that their hiring was not a result of these contact forms. Both Fernandez and Holiman testified that they had sought employment with Karman prior to the date on the contact forms and that their job with Karman had been obtained through their own efforts.

Fernandez testified that he came to first interview with Sam Mandelbaum, Karman's president, in El Paso, Texas, sometime in November, 1978; that on December 8 and 9, 1978, he was flown to Denver, Colorado, by Karman where he met with Sam Mandelbaum and some others from Karman where he was interviewed for the job of plant manager. The opening for that job did not materialize at that time, but he kept in touch with Sam Mandelbaum and Gene Tober, assistant to Mr. Mandelbaum, on a periodic basis until he was ultimately hired.

Holiman testified that in November of 1981, he was brought to Denver, Colorado, by Karman, where he was interviewed by Sam and Gary Mandelbaum, Gene Tober and Leonard Silverberg, and was made an offer to go to Mississippi and work for Karman. He declined their offer at the time and went to work for another company in Arkansas for three to four months, when he decided to leave that job and recontacted Tober. By this time the Mississippi job had been filled but he was hired by Karman for a job in El Paso, Texas, at the Maher facility, a subsidiary corporation of Karman. That plant was closed, however, and he was moved to the position he occupied at time of trial at Karman's Fulton, Mississippi plant. He also testified that Spinrad had not arranged for either of these interviews with Karman.

Gary Mandelbaum admitted at trial that he had read the provisions of the contact form, including that which stated that his company was liable for a fee if it hired anyone for whom contact information had been furnished within the previous two years. He further testified that the practice in the trade was that an employer was not required to pay the fee unless an agency was responsible for an applicant being hired. Because of this practice he simply ignored the provision on the contact form despite the fact that he had received approximately 88 such forms between 1978 and 1981. He, too, testified that when he received the contact forms on Fernandez and Holiman he was already in contact with both men.

Donald Berman testified that pursuant to industry practice it was not unusual for an employer to contact Spinrad upon receipt of a contact form and inform the agency that another agency, or another source, had already supplied them with the applicant's name. He testified that when this occurred no fee was due despite the fee provisions on the contact forms. Both Berman and Gary Mandelbaum testified that in these situations prompt notification was customary. Berman further testified that absent prompt notification, the custom of

the industry did not apply and the express provisions of the contact form controlled.

Gary Mandelbaum testified that he had telephoned Spinrad and reported his prior contacts with Fernandez and that Berman understood this. Berman, on the other hand, denied ever receiving this telephone call.

At the conclusion of the evidence the trial court, sua sponte, submitted the following instructions to the jury on each Count; the only difference in the two instructions was the name of the applicant who was the subject of that particular Count:

> Your verdict must be for plaintiff if you believe:
>
> First, that plaintiff supplied defendant with information concerning _____ _____ by means of a contact sheet, and
>
> Second, that as a result of said contact sheet defendant agreed to hire _____ _____, and
>
> Third, that defendant hired _____ _____ as an employee of their company,
>
> Fourth, plaintiff performed its agreement, and,
>
> Fifth, defendant failed to perform its agreement, and
>
> Sixth, plaintiff was thereby damaged.

Armando Fernandez's name was inserted in the blank spaces of Instruction No. 7 and Andy Holiman's name in the blank spaces of Instruction No. 11.

■ Spinrad is entitled to a new trial only if the instructions contain "defects of substance with substantial potential for prejudicial effect. *Fowler v. Park Corporation*, 673 S.W.2d 749, 755–756 [9] (Mo. banc 1984)

Spinrad argues that the trial court erred in submitting these instructions in that (a) under the evidence an express contract arose between the parties obligating the defendant to pay a fee if it hired any of the plaintiff's applicants within two years, and (b) the instructions did not submit the terms of the contract in that they required plaintiff to prove that the applicants had been hired "as a result" of plaintiff's efforts before it would be entitled to a fee.

■ The threshold questions is whether the evidence addressed at trial presented a jury issue as to whether the contact sheets constituted contracts. Karman points out that it did not sign these contact forms and therefore cannot be bound as a contracting party. However it has been held in *Sanders v. DeWitt*, 579 S.W.2d 707, 711 [1, 2] (Mo.App.1979), that "[i]t is true, as argued by appellant, that signature is not always essential to [sic] binding force of an agreement. * * * Whether an unsigned writing constitutes a binding contract usually depends on the intention of the parties. The object of a signature is to show mutuality or assent which may be shown in other ways as, for example, by acts or conduct of the parties." In determining the intention of the parties, Courts must examine the relevant circumstances, the relationship of the parties, the construction placed on any agreement by the parties over time, and any other facts and actions which cast light on what the parties' intentions were. *Rouggly v. Whitman*, 592 S.W.2d 516, 519–520 [6] (Mo.App.1979). However, the law judges intentions by outward expressions. Unexpressed intentions are irrelevant. If a party's words or acts "manifest an intentions to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on the subject." *Holmes v. Freeman*, 150 S.W.2d 557, 562 [11] (Mo.App. 1941).

■ Here Gary Mandelbaum, Karman's vice-president, admittedly received 88 contact forms from Spinrad. Each of these forms contained the provision that a fee was payable if the applicant was hired within two years. He further admitted he knew of this provision inasmuch as he had read these forms. There was no evidence that he, or anyone else from Karman, ever objected to Spinrad about that provision. Rather, he continued to request more con-

tact forms from Spinrad. It is a general rule that the acceptance by one of the performance of the other gives validity to the instrument and imposes on the acceptor the obligation provided by the contract. *Hohn v. Forest Hills Construction Company*, 334 S.W.2d 383, 385–386 [3] (Mo. App.1960). Therefore Spinrad presented sufficient evidence to create a jury issue whether Karman had agreed to abide by the terms of the contact forms. "If a written instrument, on its face, expresses a contractual obligation, one of the parties should not be permitted to avoid it on the grounds that it was never intended as such unless the evidence to such effect is cogent and convincing." *Berry v. Crouse*, 376 S.W.2d 107, 113 [6] (Mo.1964). There was no evidence in this case that was clear and cogent enough for a court to determine as a matter of law that the contact forms did not constitute agreements. Whether Karman intended to consent to the provisions on the contact forms was a question of fact for the jury, *Collins v. Swope*, 605 S.W.2d 538, 540 (Mo.App.1980). We hold that there was sufficient evidence from which the jury could find that the contact forms mailed to Karman by Spinrad constituted an agreement that if Karman hired an applicant whose name was furnished it by Spinrad within two years it would pay the scheduled fee contained on the contact form.

We now consider Karman's contention that the trial court's submission that for Spinrad to recover its fee it must prove that the applicants were hired "as a result" of Spinrad's efforts.

It is Spinrad's position that when it furnished Karman an applicant's contact form, Karman, if it hired that applicant within a two year period, was liable to it for its finder's fee and that requiring the jury to find that there was a causal relationship between the referral and the hiring was inconsistent with the terms of the agreement contained on the contact forms.

We conclude that under the evidence in this case it was a question for the jury to determine whether Karman had manifested assent to the terms stated on the "contact" forms and what the parties had agreed regarding payment of the finder's fees. Both parties admitted that they did not intend the provisions of any written agreement to be a complete statement of their agreement.

■■■■■ Donald Berman of Spinrad, conceded that the provisions of these "contact" forms were modified by custom in the trade; however, he claimed that the custom contended for by Karman did not apply here because Karman had not promptly informed Spinrad that it already knew of Fernandez and Holiman when Spinrad's "contact" forms were received. Karman, on the other hand, contended that notification was not required by custom of the trade. Thus, the finder of fact was free to look to the relationship of the parties and all of the surrounding circumstances in determining what was the agreement of the parties. The existence and content of a rule of custom is for the jury to decide. *Goslin v. Kurn*, 351 Mo. 395, 173 S.W.2d 79, 86–87 [13, 14] (Mo.1943); *Clark v. General Foods Corporation*, 81 Ill.App.3d 74, 78, 36 Ill.Dec. 447, 451–452, 400 N.E.2d 1027, 1031–1032 (1980). It was for the jury to determine whether the parties had agreed that payment of the finder's fee would be due in accordance with the terms of the "contact" form even in the absence of a cause and effect relationship between the "contact" form and the hiring.

■■■■ Whether the terms of an agreement are ambiguous is a question of law for resolution by the court. However, once the court has made the threshold determination that ambiguity exists it is then for the jury to resolve the ambiguity. *Rouggly v. Whitman,* supra; *Forsythe v. Starner*, 554 S.W.2d 100, 106 (Mo.App.1977).

Karman relies on two cases from other jurisdictions to support its contention that no fee was due Spinrad absent a cause and effect relationship. These cases are distinguishable. In *Scheff v. Robertson Paper Box Company*, 39 Conn.Sup. 135, 471 A.2d 991 (1983) there was no contract involved. In *The Recruiter, Inc. v. Brenco Automo-*

**465**

*tive Center, Inc.*, 354 N.W.2d 245 (Iowa App.1984) the contract applied only if the applicant was hired for the job for which his name was supplied. Since he was hired for a different position the contract terms regarding when payment was due did not apply and the cause of action was essentially one for quantum meruit.

■ It was error for the trial court to resolve the ambiguity involved in the agreement of the parties. It was for the jury to determine what had been agreed upon relative to the payment of a finder's fee; and therefore Instructions 7 and 11 were prejudically erroneous. When the trial court submits an instruction, it has the duty to insure that the instruction is correct. *Sheinbein v. First Boston Corporation*, 670 S.W.2d 872, 878 [17] (Mo.App. 1984). Therefore, the judgment is reversed and the cause remanded for a new trial.

DOWD, P.J., and CRANDALL, J., concur.