CITY OF HARRISONVILLE, Missouri, Appellant–Respondent,

v.

PUBLIC WATER SUPPLY DISTRICT NO. 9 OF CASS COUNTY, Missouri, Respondent–Appellant.

Nos. WD 58748, WD 58762.

Missouri Court of Appeals, Western District.

June 29, 2001.

Steven E. Mauer and Michael D. Pospisil, Kansas City, for Appellant-Respondent.

Elvin S. Douglas, Jr., Harrisonville, for Respondent-Appellant.

Before SMART, P.J., HOWARD, J., and HANNA, Sr.J.

HOWARD, Judge.

The City of Harrisonville ("the City") appeals from the trial court's judgment interpreting a contract between the City and Public Water Supply District No. 9 of Harrisonville, Missouri ("the District") concerning the provision of water service to present and future customers in annexed territory within the District's service area. The District also appeals from the trial court's judgment. The City's sole point on appeal is that the trial court erred in interpreting the agreement to allow the City to elect to provide water service only to specific customers and not annexed territory because the plain and unambiguous terms of the agreement in light of the applicable law at the time the agreement was executed, along with the parties' actions regarding the same issue in previous litigation, reveal the City would be entitled to elect to provide water service to all territory within its annexed boundaries in that if the City were allowed to elect to provide water service only to individual customers, express provisions of the agreement would be nullified and rendered useless. The District's sole point on appeal is that the trial court erred in holding that the 1974 twenty-year contract between City and the District continued uninterrupted between 1974, the date the contract was initially executed, and April 9, 1999, the date of the termination of the contract, because the Stipulation of the parties specifically provided that the 1974 contract was "renewed for a term of 20 years from the date of this stipulation," subject to

cancellation on one year's notice; further, the court had previously held in 1996 that the City had wrongfully terminated the contract in its anticipatory breach; and further, the contract provision in the 1974 contract only related to customers thereafter annexed.

We affirm.

## Facts

This appeal concerns a municipality's ability to provide water service to future residents and customers located within its municipal boundaries. The dispute before the court involves two public entities. Appellant/Cross–Respondent City of Harrisonville, Missouri is a municipality incorporated under the laws of the State of Missouri and is located in Cass County, Missouri. Respondent/Cross–Appellant Public Water Supply District No. 9 of Cass County, Missouri is a public water supply district created under Chapter 247 of the Missouri Revised Statutes, serving certain portions of Cass County, Missouri. The dispute stems from the trial court's interpretation of an agreement ("Agreement") executed by the parties in 1974, which was renewed as part of a litigation settlement between the City and the District.

## The Agreement

On October 8, 1974, the City and the District entered into an Agreement whereby the City agreed to sell water to the District. Section 14 of the Agreement provides as follows:

It is further the agreement of the parties that the parties recognize that from time to time City may, by normal growth and expansion, annex certain territories adjacent to their present or future boundaries, and within the corpo-

rate limits of City. As a condition of the purchase of the water hereunder, and in order to protect each of the parties equitably for such annexed territory, in the event of such annexation the following shall be applicable:

A.   City may authorize water District to continue to provide service to the customers then being served by District within such annexed territory for such period of time as City may elect.

B.   City at its option may elect to provide service to such customers within the District within the annexed territory and in such event, District shall have the right to remove the meter and disconnect service to such customer, and such equipment shall not be considered in costs to be reimbursed as hereafter provided.

C.   In the event such area is annexed, and as a result of service being provided by City under the foregoing election, lines of the water District previously constructed shall be useless to District, and no further service continued to be provided to other customers of the District.  Then and in such event, City shall reimburse District the cost of such line construction rendered useless by City's commencement of providing water service to the customers previously served by District, less depreciation amortized over a 33–1/3 year life, which amount shall be paid by City in cash to the District at or prior to the time of withdrawal of District's water meters from such customers.  A copy of the construction contract showing unit costs of construction, together with all addendum thereto, shall be filed with the City Clerk upon execution, and such contracts shall form the basis for determining costs hereunder.

In such event, the City shall notify the Secretary of the District of its election to serve such customers, and in the event any such customers should render useless any portion of the District's distribution system, District shall within thirty (30) days thereafter notify City of such, the cost of such improvements and the depreciation accrued in accordance with the foregoing formula and its claim for payment with the effective date of City's commencement of service.

D.   Except for those portions of District's distribution system made useless by such annexations, and the commencement of service by City to customers within such annexed area in accordance with the preceding paragraphs, such payment shall be in lieu of all other obligations to District for payment of compensation by reason of the annexation of such territory and the commencement of service to the residents within such annexed territory, and District does waive and relinquish any other claims it may have for reimbursement except as are specifically provided for herein.

Although the Agreement was for a period of twenty years, the parties chose to amend its provisions on June 3, 1976.  The amendments made to the Agreement did not affect Section 14 and, as such, that provision and all other unaltered provisions were to "remain in full force and effect."  Similarly, the Agreement was amended once again on June 17, 1981, with no alterations or changes being made to Section 14.

### Previous Litigation Between the Parties

Following the execution of the Agreement and its two amendments, the District filed suit against the City, claiming the City had breached portions of the Agreement including, but not limited to, the requirement that the City sell water to the

District. In an attempt to settle that litigation, the parties negotiated for a Stipulation for Settlement ("Stipulation") under which the Agreement would be renewed for a term of twenty years. The Stipulation provided that "the terms and conditions of the Agreement remain in full force and effect."

A hearing on the settlement was held on November 7, 1996 in the Circuit Court of Cass County, Missouri. The previous litigation between the parties was officially dismissed on November 7, 1996, when the circuit court entered a judgment incorporating by reference the settlement executed by both parties.

On April 8, 1998, the District attempted to unilaterally cancel the Agreement, effective immediately.

### The City's Attempt to Enforce its Alleged Rights Under Section 14 of the Agreement

On March 3, 1999, the City, pursuant to Section 14 of the Agreement, informed the District of its decision to assume water service in certain areas it had annexed into its municipal boundaries that were then being served by the District. Along with this request, the City provided the District with a list of the areas within the District's boundaries for which the City had elected to provide water service. Due to the fact that the provisions of Section 14 were deemed to be in full force and effect by the November 7, 1996 judgment entry, the City offered to compensate the District for the construction costs of all water lines, if any, which would be rendered unnecessary by the City's decision to service customers in the annexed territories. The District refused to transfer all customers located in the City's annexed territory to the City's water service and also refused to withdraw its water meters connected to those customers' lines.

### Proceedings Below

The City then filed the lawsuit that is the subject of this appeal. The City asserted claims for breach of contract, specific performance, and quantum meruit. The City also filed a motion for partial summary judgment on its breach of contract and specific performance claims. Subsequent to its motion for summary judgment, the City filed its amended petition on December 6, 1999, alleging the same three causes of action.

The District filed its answer on January 14, 2000. Approximately one month later, the District filed its motion for leave to file counterclaim to seek a declaratory judgment that the District's water service is protected under 7 U.S.C. § 1926(b) and that the City should be enjoined from attempting to provide water service to any customer within the territorial boundaries of the District. The District also filed a motion for summary judgment against the City on all counts of the amended petition.

Following the completion of briefing on both motions for summary judgment and the motion for leave to file counterclaim, the trial court conducted several hearings. On February 28, 2000, the District's motion for leave to file counterclaim was denied. On March 31, 2000, oral argument took place on the cross-motions for summary judgment. At that hearing, the trial court framed the issue as "what Section 14 means, and whether or not customers means present customers, or customers means the entire territory that [the City] made the election on."

The trial court denied both motions for summary judgment and, upon the consent of the parties, entered a judgment on the merits. The court determined that 1) the 1974 Agreement remained in full force and effect from its inception in 1974 until April

9, 1999, based on the Stipulation of the parties entered in August 1996 and approved by the court on November 7, 1996; and 2) the City properly elected to provide water service to "those customers being provided water service by the [District] on and before April 9, 1999, that were within the scope of those customers identified in the March 3, 1999 letter from [City] (by its attorney) to [District]." However, the trial court held that the City could not provide water service to all present and future customers in its annexed territories because the rights under Section 14 were customer specific and not territorial in nature. The court also found that the District was not afforded protection under 7 U.S.C. § 1926(b). The City and the District now appeal.

### Standard of Review

We will sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *see also Martin v. United States Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). The construction of written contracts is ordinarily a question of law, and therefore the trial court's construction of the contract, being a legal conclusion, is not binding on appeal. *Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A.*, 803 S.W.2d 23, 32 (Mo. banc 1991).

### The City's Point on Appeal

The City's sole point on appeal is that the trial court erred in interpreting the Agreement to allow the City to elect to provide water service only to specific customers and not annexed territory. In light of the applicable law at the time the Agreement was executed, along with the parties' actions regarding the same issue in previous litigation, the City claims the plain and unambiguous terms in the Agreement entitle it to elect to provide water service to all territory within its annexed boundaries; otherwise, express provisions of the Agreement would be nullified and rendered useless.

We address each of the City's arguments in turn. However, because they are closely related, we combine our discussion of the City's first and fourth arguments. The City's first argument is that the plain and unambiguous terms of the Agreement reveal the City would be entitled to elect to provide water service to all territory within its annexed boundaries. The City's fourth argument is that the trial court's limiting Section 14 to customers and not territory renders provisions of the Agreement useless.

In *Mt. Hawley Insurance Co. v. Azia Contractors, Inc.*, 886 S.W.2d 640, 642 (Mo. App. W.D.1994), we stated as follows:

The primary rule in interpretation of contracts is to ascertain the intent of the parties and give effect to that intent. *Marshall v. Pyramid Development Corp.*, 855 S.W.2d 403, 406 (Mo.App. 1993). Where there is no ambiguity in a contract, the intent of the parties is to be determined from the contract alone and the courts will not resort to construction where the intent of the parties is expressed in clear and unambiguous language. *Id.* Where there is ambiguity, the court must examine all relevant circumstances including the relationship of the parties, the construction placed on the contract by the parties over time, and any other facts and actions which cast light on the intention of the parties. *Mal Spinrad of St. Louis, Inc. v. Karman, Inc.*, 690 S.W.2d 460, 463 (Mo.App. 1985). Whether the terms of an agree-

ment are ambiguous is a question of law. *Id.* at 464.

We read the terms of the contract as a whole to determine the intention of the parties. *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo.App. W.D.1995). We construe each term to avoid rendering other terms meaningless. *Id.* "A construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of the provisions without function or sense." *Id.*

A trial court cannot use parol evidence to vary or contradict terms of an unambiguous contract. *Mercantile Bank of St. Louis v. Benny,* 978 S.W.2d 840, 844 (Mo.App. W.D.1998). "We will not allow parol evidence to create an ambiguity in order to distort the clear language of the document." *JCBC, L.L.C. v. Rollstock, Inc.,* 22 S.W.3d 197, 204 (Mo.App. W.D. 2000), quoting *Ironite Prods. Co. v. Samuels,* 985 S.W.2d 858, 862 (Mo.App.1998).

We find the terms of the Agreement to be clear and unambiguous. The first paragraph of Section 14 provides that one of the purposes of the section is to "protect each of the parties equitably for . . . annexed territory." Subsection A provides that "City may authorize water District to continue to provide service to the customers *then being served* by District within such annexed territory for such period of time as City may elect." (Emphasis added.) Subsection B provides that "City at its option may elect to provide service to *such customers* within the District within the annexed territory and in such event, District shall have the right to remove the meter and disconnect service to *such customer,* and such equipment shall not be considered in costs to be reimbursed as hereafter provided." (Emphasis added.) A logical reading of the two subsections together leads to the conclusion that the references to "such customers" and "such customer" in Subsection B refer to the customers "then being served" as referred to in Subsection A.

Subsection C provides, in relevant part, as follows:

In the event such area is annexed, and as a result of service being provided by City under the foregoing election, lines of the water District previously constructed shall be useless to District, and no further service continued to be provided to other customers of the District. Then and in such event, City shall reimburse District the cost of such line construction rendered useless by City's commencement of providing water service to the customers previously served by District. . . . In such event, City shall notify the Secretary of the District of its election to serve such customers, and in the event any such customers should render useless any portion of the District's distribution system, District shall within thirty (30) days thereafter notify City of such . . . .

Subsection C may not be artfully drafted, yet we find that it does not render the Agreement ambiguous, and it certainly does not suggest the interpretation the City espouses. Furthermore, we find that the trial court's limiting Section 14 to customers rather than territory does not render provisions of the Agreement useless.

The City's second argument is that it always had the ability to provide water service to the annexed territory under the law in existence at the time the Agreement was executed. The City points to paragraph eight of the Agreement, which provides that "this Contract is subject to such rules, regulations, or laws as may be applicable to similar agreements in the State of Missouri . . . ." The City also cites the rule that "the laws which exist at the time and

place of making a contract, and at the place where it is to be performed, affecting its validity, construction, enforcement, termination and discharge, enter into and form a part of the contract as if they were expressly referred to or incorporated therein." *City of Hamilton v. Public Water Supply Dist. No. 2 of Caldwell County,* 849 S.W.2d 96, 103 (Mo.App. W.D.1993), quoting *Sharp v. Interstate Motor Freight Sys.,* 442 S.W.2d 939, 945 (Mo. banc 1969).

The City cites several cases in support of its argument that it had the ability to provide water service to the annexed territory under the law in existence at the time the Agreement was executed. The first case cited by the City is *Mathison v. Public Water Supply District No. 2 of Jackson County,* 401 S.W.2d 424 (Mo.1966). In *Mathison,* residents of the city sought, pursuant to § 247.170, to detach and exclude from the district all of the district's territory lying within the corporate limits of the city. *Mathison,* 401 S.W.2d at 425. The court stated as follows:

It is apparent from our analysis of those sections of Chapter 247 applicable to county water supply districts that the legislature intended that such districts, at the time of their organization and thereafter, serve only those areas not otherwise served with water. Otherwise the legislature would not have by impli-

cation in § 247.030 [1] excluded from the initial territory of the district those cities having a water supply system; nor would the legislature have provided a method (§ 247.170) whereby the city could, as it grew, acquire the assets of a district lying within an area annexed by the city, without the consent or agreement of the district. It is obvious that the legislature did not intend that both the city and the district distribute water in the same area at the same time, otherwise it would have defeated the purpose expressed in § 247.010. It is just as obvious that the legislature intended that initially and ultimately the one of the two to be excluded from supplying water within the corporate limits of a city owning a water system is the district.

*Id.* at 431.

*Mathison* is not applicable to the present case because that case involved a proceeding, pursuant to § 247.170,[2] to detach all of the area of the water district that was within the corporate limits of the city, which is not the case here. The *Mathison* court's interpretation of the statutes allowing cities to expand and detach annexed areas from a water district is not dispositive in divining the contractual intent of the present parties.

---

1. All statutory references in cited cases are to the version of RSMo in effect at the time of those cases. All other statutory references are to RSMo Cum.Supp.1999, unless otherwise indicated.

2. Section 247.170 provides, in relevant part, as follows:

1. Whenever any city owning a waterworks or water supply system extends its corporate limits to include any part of the area in a public water supply district, and the city and the board of directors of the district are unable to agree upon a service, lease or sale agreement, or are unable to

proceed under section 247.160, then upon the expiration of ninety days after the effective date of the extension of the city limits, that part of the area of the district included within the corporate limits of the city may be detached and excluded from the district. . . .

The statute then goes on to specify the procedures that must be followed in order to detach the annexed area from the district's area. There is no indication in the present case that the City has made any attempt to detach the District's property under § 247.170.

The City also cites *Jackson County Public Water Supply District No. 1 v. Ong Aircraft Corporation*, 409 S.W.2d 226 (Mo. App.1966). In *Ong*, the district sought an injunction to stop the city from supplying water to a subdivision partially located within the territorial boundaries of the district. *Ong*, 409 S.W.2d at 228. The court held that there was no express written contract giving the district the exclusive right to furnish and sell water in the district, and the court held that no such contract could be implied. *Id.* at 229. The court held that § 91.050[3] and Chapter 247 do not limit or restrict where the city may supply water, and the district did not have the exclusive right to supply water within its boundaries. *Id.* at 230.

The District argues that *Ong* is not relevant to the issues presented in this case. In that case, *Ong* was developing a subdivision of an 80–acre tract of land, which was partially split between the city and the water district area outside the city boundary. *Id.* at 228–29. No water service was being provided to the area by the water district at the time. *Id.* at 231. The City of Kansas City had a contract with the developer to provide water service to the entire subdivision, and the court permitted the city to do so. *Id.* at 229, 232. However, it was not a question that the water district was already providing service to customers and was being forced to give up those customers based on an annexation proceeding. In *Ong*, the district's territory was not being detached and it was currently deriving no water sales revenue from the area and had no service to the area at the time. *Id.* at 231. Much of the *Ong* discussion revolves around whether

the district was irreparably harmed in the context of an injunction proceeding. Since annexation was not involved and the district would lose no territory or ad valorem tax revenue, the court found the necessary element of irreparable harm lacking. *Id.*

Regardless of the general right of a city to provide water outside its corporate boundaries, the parties in the present case spelled out their rights and obligations in the contract they executed.

In its reply brief, the City cites *Chance v. Public Water Supply District No. 16*, 41 S.W.3d 523 (Mo.App. W.D.2001), for its citation of *Ong*. *Chance* involved a situation where individual landowners petitioned to detach a portion of their property from a water district. *Chance*, 41 S.W.3d at 524. The court noted that there is a distinction between individuals and municipalities with regard to detachment from water districts, with § 247.031 affording the voters residing within water district territory the opportunity to petition for detachment from the district, and §§ 247.160 and 247.170 allowing contractual arrangements and detachment proceedings between municipalities and districts. *Id.* at 525. The court cited *Ong* in support of its finding that while the City of Independence had not annexed the individual landowners' property, it was not prohibited from supplying them water. *Id.* The court stated that "the *Ong* court found that the General Assembly did not intend to restrict a city from supplying water to a district's territory or to give a water district an exclusive right to supply water." *Id.* The court held that the circuit court did not err in detaching the landowners'

---

**3.** Section 91.050 provides as follows:

Any city in this state which owns and operates a system of waterworks may, and is hereby authorized and empowered to, supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties.

property from the district and finding no significant adverse effect on the remainder of the district. *Id.* at 525–26. Our case does not involve a judicially imposed detachment of property.

The City also cites *Public Water Supply District No. 1 of Butler County v. City of Poplar Bluff,* 12 S.W.3d 741 (Mo.App. S.D. 1999). In *Poplar Bluff,* the issue was whether the city's failure to comply with procedures under §§ 247.160 and 247.170 rendered the city's annexations of areas in the water district void. *Poplar Bluff,* 12 S.W.3d at 744. The court did not address the effect of the city's failure to comply with §§ 247.160 and 247.170 on the city's ability to provide water service. *Id.* at 744–46.

In *Public Water Supply District No. 16 v. City of Buckner,* 951 S.W.2d 743, 744 (Mo.App. W.D.1997),[4] the city annexed a tract the district had planned, but had not yet begun, to serve. The district sought an injunction to prevent the city from extending its water service into the area without first complying with § 247.170. *Buckner,* 951 S.W.2d at 744. The circuit court dismissed the district's petition, and the district appealed. *Id.* In reversing, this court held that compliance with § 247.170 is mandatory even where the district does not serve customers and owns no lines or equipment in the annexed area. *Id.* at 745.

In *Public Water Supply District No. 10 of Cass County v. City of Peculiar,* 971 S.W.2d 849, 850 (Mo.App. W.D.1998), the city annexed parts of the district's service areas, and then began furnishing water service to some customers within the annexed areas. The district sought an injunction to prevent the city from offering

water service within the service area of the district, and to stop the city from serving customers as soon as the district took the necessary steps to provide such customers with water. *Peculiar,* 971 S.W.2d at 850. The circuit court granted the district's motion for summary judgment and denied the city's, and the city appealed. *Id.* The issue on appeal was whether the city was required to comply with § 247.170 before it could service inhabitants within the annexed areas of the district. *Id.* at 854. We held that in order to service inhabitants in the annexed areas that it had not previously serviced, the city was obligated to comply with the procedures for acquiring the right to service such area set out in § 247.170. *Id.* at 855.

■ We find *Buckner* and *Peculiar* persuasive. In the present case, there was no agreement under § 247.160 that the City would be able to provide water to all present and future customers within annexed territory, but rather the Agreement provided that the City may provide water only to existing customers within the annexed territory. Therefore, we find that the City was required to proceed under § 247.170 if it wished to provide water service to all customers in the annexed territory. None of the cases cited by the City hold otherwise.

■ The City's third argument is that through its action in the previous litigation, the District admitted the Agreement provides territorial protection to the City. Specifically, the City argues that in settlement negotiations in the previous litigation, the District attempted to bargain for terms that would have given the District territorial protection over the annexed

---

4. The City argues that *Buckner* is irrelevant because the parties agreed to settle the previous litigation in November 1996, and that opinion was not issued until September 1997.

However, we find that *Buckner* did not change the state of the law, as the City contends, but only interpreted existing law.

property. However, we find that such evidence may not be considered. As previously discussed, we find that the Agreement itself is unambiguous. Therefore, no parol evidence attempting to explain the intent of the parties in drafting the Agreement may be considered. *Mercantile Bank of St. Louis,* 978 S.W.2d at 844. Point denied.

### The District's Point on Appeal

The District's sole point on appeal is that the trial court erred in holding that the 1974 twenty-year contract between the City and the District continued uninterrupted between 1974, the date the contract was initially executed, and April 9, 1999, the date of the termination of the contract, because the Stipulation of the parties specifically provided that the 1974 contract was "renewed for a term of 20 years from the date of this Stipulation," subject to cancellation on one year's notice; further, the court had previously held in 1996 that the City had wrongfully terminated the contract in its anticipatory breach; and further, the contract provision in the 1974 contract only related to customers thereafter annexed.

In its judgment, the trial court found as follows:

> [T]he 1974 Contract entered into between the parties was in full force and effect and remained in full force and effect until April 9, 1999, based upon the stipulation of the parties entered in August, 1996 and approved by this Court on November 7, 1996.

> The Court further finds that there was no lapse in the application of the Water Purchase Contract after its initial effective date, and particularly paragraph 14 thereof relating to the consent of [District] for [City] to serve certain customers being served by [District] un-

til April 9, 1999, the effective date of the termination of such contract.

The District contends that the Agreement was wrongfully terminated by the City by its 1989 notice, effective July 1, 1991. That fact, the District argues, is confirmed by the 1996 judgment in favor of the District for $570,000 for damages for the wrongful termination of the contract, on the basis of anticipatory breach. The District further contends that after May 8, 1993, it no longer took water from the City. The District argues that the City continued to supply water after the July 1, 1991 date because of the suit on file to prevent it from discontinuing service, but the City never repudiated or withdrew its 1989 termination letter.

There was evidence to support the fact that the City continued to provide water to the District after May 8, 1993. Furthermore, if the District believed that the Agreement terminated in 1991, we question why it sent the City a termination letter on April 8, 1998. In that letter, the City terminated all agreements between the District and the City pertaining to the purchase of water by the District, "particularly pursuant to the agreement dated October 8, 1974, and the amendments to that agreement dated October 3, 1976 and June 17, 1981, as further modified by Stipulation for Settlement entered into and approved by the [District] on August 22, 1996 and by the City of Harrisonville August 26, 1996."

The District further argues that the Stipulation before the court specifically provides that the Agreement was to be renewed from and after the effective date of the Stipulation, which was August 26, 1996. The court ruled on it in November 1996. The District argues that there was no basis for the court's finding that the annexation proceedings that occurred between May 1993 and November 1996 would be governed by the original Agree-

ment. Rather, the District argues, between May 8, 1993 (if not July 1, 1991) and August 26, 1996, no agreement was in force between the parties, and the customers annexed during that time frame remain the customers of the District.

The Stipulation provides that the 1974 Agreement "is hereby renewed for a term of 20 years from the date of this Stipulation." The Stipulation further provides that "[e]xcept as expressly amended herein the terms and conditions of the Agreement remain in full force and effect." The District contends that the court seized upon the word "renew" in the Stipulation as meaning that the Agreement never lapsed. The District cites the definitions of "renew" and "renewal" in Black's Law Dictionary and contends that none of the definitions are consistent with the court's finding that there was never any lapse based on the plain language of the Stipulation. However, Black's Law Dictionary states that "[t]o 'renew' a contract means to begin again *or continue in force* the old contract." BLACK'S LAW DICTIONARY 1296 (6th ed.1990) (emphasis added). Furthermore, the language in the Stipulation that the terms of the Agreement "remain in full force and effect" indicates that the Agreement did not lapse.

We hold that there was sufficient evidence to support the trial court's finding that the original 1974 Agreement continued uninterrupted until April 9, 1999. Point denied.

The judgment of the trial court is affirmed.

SMART, P.J., and HANNA, Sr.J., concur.