**PUBLIC WATER SUPPLY DISTRICT NO. 14 OF JACKSON COUNTY and City of Lee's Summit, Relators,**

v.

**The Honorable Vernon E. SCOVILLE, III, Respondent.**

**No. WD 67427.**

Missouri Court of Appeals, Western District.

May 15, 2007.

Christine Schlomann, Relator, Kansas City, for Appellant.

Leslie Ava Kulick, Overland Park, KS, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

When Lone Summit Bank and Lone Summit Development Group, Inc.,[1] filed a petition with the circuit court asking for approval to detach their land from the territory of Public Water Supply District No. 14 of Jackson County, the water district and the City of Lee's Summit filed objections. After a hearing, The Honorable Vernon E. Scoville, III, denied Lone Summit's request to detach but granted it "the right and opportunity to seek and receive water from source(s) other than Public Water Supply District 14, without direct or indirect interference or restraint by the District, the City of Lee's Summit,

or those acting on their behalf or their advice, or at their direction." Judge Scoville's order[2] also stated that the court would retain jurisdiction over the case because the court could not determine "at this time" whether the detachment would "adversely affect the remainder of the public water supply district[.]" The circuit court said that it would have "to monitor development of water infrastructure, dissolutions, annexations, and property development in the remainder of District 14 before issuing a final order granting or denying the Petition."

Water District No. 14 and Lee's Summit ask us to issue a writ of prohibition ordering Judge Scoville to vacate his order granting Lone Summit the right to seek water from sources other than Water District No. 14. We issue a writ of prohibition in which we direct Judge Scoville to refrain from enforcing his order of July 10, 2006.

A writ of prohibition is appropriate " 'to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power.' " *State ex rel. Lebanon School District R–III v. Winfrey,* 183 S.W.3d 232, 234 (Mo. banc 2006) (citation omitted). Water District No. 14 and Lee's Summit assert that Judge Scoville abused his discretion and exceeded his jurisdiction by permitting Lone Summit to obtain water from a source other than Water District No. 14 while denying Lone Summit's petition for detachment. We agree.

Lone Summit sought to detach its land from Water District No. 14's territory pursuant to Section 247.031, RSMo Supp. 2005. This statute "provides a statutory

---

1. We will refer to Lone Summit Bank and Lone Summit Development Group, Inc., collectively as "Lone Summit."

2. Judge Scoville did not issue a judgment, only an order.

right to a landowner to detach its land from a district if certain conditions are met, and it provides certain procedures to follow in order to accomplish this task." *Allen v. Public Water Supply District No. 5 of Jefferson County,* 7 S.W.3d 537, 541 (Mo.App.1999). Hence, according to Section 247.031, for a property owner to obtain water from a source other than the water district in which the property is located, the property must be detached from the water district.

Lone Summit relies on *Jackson County Public Water Supply District No. 1 v. Ong Aircraft Corporation,* 409 S.W.2d 226 (Mo. App.1966), *cert. denied,* 387 U.S. 919, 87 S.Ct. 2033, 18 L.Ed.2d 973 (1967), for the proposition that a water district lacks exclusive jurisdiction over providing service to customers within its territory.[3] In *Ong,* Kansas City's municipal authorities sought to serve water to an area within the water district's territory that was not being served by Water Supply District No. 1 but which the city did not seek to detach from the water district's territory.[4] The *Ong* court said:

> It is obvious that [Section 91.050][5] authorizes the City to furnish water outside its corporate limits to persons and private corporations. The section does not prohibit the City from supplying water to persons or corporations in water districts. In fact, it dos [sic] not limit or restrict where the City may supply water. If the legislature had intended to restrict the City as to where it could supply water, it could easily have done

---

3. *Cf. City of Harrisonville v. Pub. Water Supply Dist. No. 9 of Cass County,* 49 S.W.3d 225, 234 (Mo.App.2001) ("City was required to proceed under Section 247.170, if it wished to provide water service to all customers in the annexed territory"); *Pub. Water Supply Dist. No. 16 v. City of Buckner,* 951 S.W.2d 743, 745 (Mo.App.1997) (city must comply with Section 247.170 before providing service to inhabitants of annexed areas of the water district); *Pub. Water Supply Dist. No. 10 of Cass County v. City of Peculiar,* 971 S.W.2d 849, 855 (Mo.App.1998) (city must comply with Section 247.170 before providing service to inhabitants within the annexed areas of the water district); *Mathison v. Pub. Water Supply Dist. No. 2 of Jackson County,* 401 S.W.2d 424, 431 (Mo.1966) ("It is obvious that the legislature did not intend that both the city and the district distribute water in the same area at the same time, otherwise it would have defeated the purpose expressed in Section 247.010. It is just as obvious that the legislature intended that initially and ultimately the one of the two to be excluded from supplying water within the corporate limits of a city owning a water system is the district." Otherwise, "the legislature [would not] have provided a method (Section 247.170) whereby the city could, as it grew, acquire the assets of a district lying within an area annexed by the city, without the consent or agreement of the district.").

4. "[T]he General Assembly created two means for a municipality to detach property from a water district. Section 247.160 establishes that, after a municipality annexes territory within a water district, the district can contract with the municipality to continue serving the annexed area or to sell or lease any or all of its operations within the district. If the municipality and district cannot agree, Section 247.170 ... allows a municipality, at least 90 days after it annexes an area, to petition for the question of detachment to be submitted to voters in a special election within the entire district." *Chance v. Pub. Water Supply District 16,* 41 S.W.3d 523, 525 (Mo. App.2001).

5. Section 91.050, RSMo 2000, says, "Any city in this state which owns and operates a system of waterworks may, and is hereby authorized and empowered to, supply water from its waterworks to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor, for such time, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties."

so by prohibiting it from entering water districts. Since Section 91.050 ... does not restrict the areas where the City can supply water and Chapter 247 neither restricts the City from the area of the District nor gives the District an exclusive right to supply water, we find no statutory support for the District's contention.

*Id.* at 230.

Lone Summit's case, however, is not like *Ong.* Unlike *Ong,* it does not involve a municipality seeking to supply water to inhabitants of a water district.[6] Instead, it involves property owners seeking to detach their property from the water district in which the property is located. The General Assembly set out the procedures for accomplishing this in Section 247.031. This statute says that the property owners may file a petition for detachment when their property "is not being served by such district," and then sets forth the necessary findings the circuit court must make before allowing detachment. In the absence of the requisite findings, a property owner cannot detach his or her land from the water district.

 Under Section 247.031, Judge Scoville did not have authority to deny Lone Summit's petition for detachment at the same time that he was granting it the right and opportunity to receive water from sources other than Water District

No. 14. Although Judge Scoville wanted to postpone his determination concerning the detachment until he could monitor the "development of water infrastructure, dissolutions, annexations, and property development" in Water District No. 14, he, in effect, did not postpone his determination but instead granted Lone Summit the practical equivalent of a detachment by allowing it to obtain water from sources other than Water District No. 14. Section 247.031 does not grant him such authority.

Lone Summit asserts that Section 247.031.3 gives the circuit court the authority to continue the case "for good cause shown," and, therefore, the circuit court had the authority to take the case under advisement and monitor the "development of water infrastructure, dissolutions, annexations, and property development in the remainder of District 14 before issuing a final order granting or denying the Petition." We agree that the circuit court had the authority to continue the case, but it had no authority to grant Lone Summit the right to receive water from sources other than Water District No. 14 while it was taking the case under advisement.

Pursuant to Section 247.031.1, Judge Scoville was required to determine whether or not Lone Summit's property was "not being served" by Water District No.

---

**6.** *Ong* is further distinguishable. As this court aptly said in City of Harrisonville, 49 S.W.3d at 233, "Ong was developing a subdivision of an 80–acre tract of land, which was partially split between the city and the water district area outside the city boundary. No water service was being provided to the area by the water district at the time. The City of Kansas City had a contract with the developer to provide water service to the entire subdivision, and the court permitted the city to do so. However, it was not a question that the water district was already providing service to customers and was being forced to give up those

customers based on an annexation proceeding. In *Ong,* the district's territory was not being detached and it was currently deriving no water sales revenue from the area and had no service to the area at the time. Much of the *Ong* discussion revolves around whether the district was irreparably harmed in the context of an injunction proceeding. Since annexation was not involved and the district would lose no territory or ad valorem tax revenue, the court found the necessary element of irreparable harm lacking." (Citations omitted.)

14. If Judge Scoville determined that Lone Summit's property was not being served, Section 247.031.4 required him to determine whether or not detachment would be "in the best interest of the district" and would not "adversely affect[ ]" the inhabitants and landowners of the area to be detached, or whether or not detachment would be "in the best interest of the inhabitants and landowners of the territory to be detached and [would] not adversely affect the remainder of the district[.]"

Hence, because Judge Scoville abused his discretion by exceeding his jurisdiction, we issue a writ of prohibition directing Judge Scoville to refrain from enforcing his order of July 10, 2006.[7]

JOSEPH M. ELLIS, Judge, and LISA WHITE HARDWICK, Judge, concur.

7. Because we reach this conclusion, we need not address Water District No. 14's and Lee's Summit's remaining points on appeal.